GREGG COUNTY, Texas, Appellant,

v.

Douglas E. FARRAR, Appellee.

No. 03–95–00273–CV.

Court of Appeals of Texas,
Austin.

Nov. 6, 1996.

Rehearing Overruled Dec. 12, 1996.

Kathryn L. Shilling, Fletcher & Springer, L.L.P., Dallas, William W. Krueger, III, Fletcher & Springer, Austin, Ann Clarke Snell, Bickerstaff, Heath, Smiley, Pollan,

Kever & McDaniel, L.L.P., Austin, for appellant.

D. Douglas Brothers, Brothers & Associates, Austin, for appellee.

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

This is an appeal from judgment on a jury verdict in a suit brought by Douglas Farrar against Gregg County under the Texas Whistleblower Act.[1] After a trial resulting in a verdict for the plaintiff, the trial court first granted the county's motion for judgment notwithstanding the verdict, then reconsidered and vacated that order, entering judgment on the jury's findings. The jury awarded Farrar $18,000 for lost wages and mental anguish, plus attorneys' fees and costs.

The county contends that the trial court lacked jurisdiction over Farrar's claims because he failed to present them to the county commissioner's court pursuant to section 81.041(a) of the Local Government Code or, alternatively, because Farrar failed to exhaust the applicable grievance procedures as required by the Whistleblower Act. The county further argues that the trial court erred in (1) excluding evidence at trial of the grievance committee's hearing and decision; (2) vacating the judgment notwithstanding the verdict because there was no evidence of retaliation by Gregg County; and (3) assessing sanctions against Gregg County for denying certain requests for admissions which were freely admitted at trial.

We conclude that the presentment requirement of Local Government Code section 81.041(a) does not apply in this situation. However, we believe that the language of and policy underlying the Whistleblower Act required Farrar to utilize all grievance procedures, including an appeal to the county commissioner's court. Because he failed to do so, the district court lacked jurisdiction over his claims. Accordingly, we will reverse the judgment of the trial court and dismiss the cause.

## FACTUAL AND PROCEDURAL BACKGROUND

Douglas Farrar began his employment with Gregg County in Precinct Four as a class A road operator. By the time James Johnson became county commissioner in January 1991, Farrar had been elevated to road superintendent, the highest position in the commissioner's precinct. Upon taking office, Commissioner Johnson began implementing new work policies and procedures, in addition to remodeling various precinct facilities and cleaning up work sites. In late January the new commissioner asked Farrar to remove several barrels located on a porch at the precinct yard. Commissioner Johnson testified that, because Farrar was reluctant to remove the barrels without knowing their contents, he ordered Farrar to determine what was in the barrels. Farrar testified that Johnson wanted him to dump the barrels into a pit at the airport. He also testified that after he contacted a laboratory about testing the contents of the barrels, Commissioner Johnson determined that the tests were too expensive and again asked Farrar to remove the barrels. Soon after the commissioner's first request, Farrar informed the county health officer that Commissioner Johnson had asked him to dump barrels containing unknown substances. Later in June, Farrar reported the incident to the Gregg County district attorney during a grand jury investigation into whether the county under a prior administration had improperly used county equipment and materials.

After returning from vacation on July 8, Farrar learned that the barrels had been removed to the airport. On July 22, Commissioner Johnson informed Farrar that he was being demoted from road superintendent to class B operator. The next day Farrar met with the commissioner to protest the demotion. When his efforts were unsuccessful, Farrar instituted a grievance hearing

1. Texas Whistleblower Act, 68th Leg., R.S., ch. 832, 1983 Tex.Gen.Laws 4751, *amended by* Act of June 16, 1989, 71st Leg., R.S., ch. 1222, § 1, Tex.Gen.Laws 4943 (formerly Tex.Rev.Civ.Stat. Ann. art. 6252–16a, *since repealed and codified at* Tex.Gov't Code Ann. §§ 554.001–.009 (West 1994 & Supp.1996)). We will refer to the statute in effect at the time of this lawsuit, Former Tex.Rev. Civ.Stat.Ann. art. 6252–16a.

pursuant to the Gregg County employee manual. After a hearing on August 8, the grievance committee affirmed the demotion but informed Farrar that he was entitled to appeal the decision to the county commissioner's court by presenting a written request within seven days. Farrar made no such appeal.[2]

Farrar filed suit against the county on October 31, 1991, alleging violations of the Whistleblower Act and the Hazard Communication Act, wrongful demotion, intentional discrimination, breach of contract, negligence, conspiracy, and violation of public policy. The court granted the county's motion for summary judgment on all causes of action except Farrar's claim that the county demoted him and eventually terminated his employment in retaliation for reporting a violation of law. The court denied the county's second motion for summary judgment asserting that the statute of limitations had expired and proceeded to trial on the whistleblower claims. The jury found that Gregg County wrongfully demoted Farrar from road superintendent to class B operator in retaliation for Farrar's reporting a violation of law to a law enforcement authority. The trial court first granted the county's motion for judgment notwithstanding the verdict, then reconsidered and vacated that order, rendering judgment on the jury verdict. After a post-trial hearing, the court granted Farrar's motion for sanctions against the county for abuse of discovery.

### DISCUSSION

#### A. Presentment

In points of error one and two, the county contends that the trial court lacked jurisdiction because Farrar failed to present his

claim to the Gregg County Commissioner's Court before bringing suit as required by Local Government Code section 81.041(a), which provides

[a] person may not sue on a claim against a county unless the person has presented the claim to the commissioner's court and the commissioner's court has neglected or refused to pay all or part of the claim.

Tex.Loc. Gov't Code Ann. § 81.041(a) (West 1988). The county asserts that this statute is jurisdictional in nature, so that failure to present a claim in the commissioner's court renders void the trial court's judgment.[3] The county relies on *Bowles v. Wade*, 913 S.W.2d 644 (Tex.App.—Dallas 1995, writ denied), in which the Dallas Court of Appeals reversed a judgment against the county because the plaintiff had failed to present his claim to the county before filing suit. The court held that "satisfaction of section 81.041 is necessary before a litigant has standing to invoke a trial court's subject matter jurisdiction." *Id.* at 648.

We hold that section 81.041 does not govern suits against counties under the Whistleblower Act. In rejecting the county's argument, we follow the reasoning of cases holding that section 81.041(a) does not apply to suits brought against counties under the Texas Tort Claims Act. *See Harris County v. Dillard*, 841 S.W.2d 552, 557 (Tex.App.—Houston [1st Dist.] 1992), *rev'd on other grounds*, 883 S.W.2d 166 (Tex.1994); *Rosales v. Brazoria County*, 764 S.W.2d 342 (Tex. App.—Texarkana 1989, no writ); *Harris County v. Dowlearn*, 489 S.W.2d 140, 146 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.). The courts in those cases concluded that the notice provision of the Texas Tort Claims Act constituted the exclusive notice requirement for bringing suit un-

---

2. Farrar then took an extended leave of absence because of a disability. While he was on leave, he testified before a federal grand jury that indicted Commissioner Johnson for the illegal disposal of toxic chemicals. Commissioner Johnson was subsequently acquitted of the federal charges. The record shows that Gregg County informed Farrar that all available leave had run out and the only alternative was to go on administrative leave of absence. After receiving no response from Farrar, the county terminated Farrar's employment. Farrar alleged in this suit,

in addition to the demotion, that he was wrongfully terminated in retaliation for testifying in the federal grand jury proceedings. The jury entered a negative finding as to that allegation.

3. The county never objected at trial to Farrar's failure to present his claim under section 81.041 of the Local Government Code. Because the county's assertion is that the trial court lacked subject matter jurisdiction, however, we address this point of error.

der that statute. *See Dowlearn,* 489 S.W.2d at 146.

■ Like the Texas Tort Claims Act, the Whistleblower Act creates a cause of action under which public entities may be sued. *See Travis County v. Colunga,* 753 S.W.2d 716, 718 (Tex.App.—Austin 1988, writ denied). The purpose of section 81.041(a) is "to advise the commissioners court of [a] claim and afford it an opportunity to investigate and adjust it without litigation." *Bowles,* 913 S.W.2d at 650. Although the Whistleblower Act does not contain a *notice* provision, the statute provides that before suit is brought

> [a]n employee of a local governmental body must exhaust any applicable grievance or appeal procedures adopted by the employing local governmental body to resolve disputes concerning the suspension or termination of an employee's employment or an allegation of unlawful discrimination.

*See* Former Tex.Rev.Civ.Stat.Ann. art. 6252—16a, § 3(d). The supreme court has stated that requiring exhaustion of remedies before suing under an anti-discrimination statute "encourages compliance through voluntary resolution, conference, conciliation and persuasion—informal processes other than litigation." *See Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 486 (Tex.1991) (person claiming violation of Commission on Human Rights Act must exhaust that statute's remedies before bringing suit for the violation). The exhaustion requirement of the Whistleblower Act thus apprises the governmental entity of a claim against it and serves the same purpose as the notice requirement of section 81.041.

■ When two statutes concern the same subject matter, generally the more specific statute will control over the statute of more general application. *See Stinnett v. Williamson County Sheriff's Dept.,* 858 S.W.2d 573, 576 (Tex.App.—Austin 1993, writ

denied) (Human Rights Act which provides recourse for retaliation against employee who files a complaint alleging discrimination is more specific than Whistleblower Act which protects generally against retaliation for reporting any violation of law). Section 81.041 applies generally to claims against counties, whereas the Whistleblower Act creates a specific cause of action against the county. Therefore, because the exhaustion requirement of the Whistleblower Act inherently provides the county with the requisite notice, it supplants the general presentment requirement of section 81.041(a).[4] Accordingly, Farrar was not required to comply with section 81.041(a) before suing the county under the Whistleblower Act. We overrule points of error one and two.

## B. Exhaustion

In its third and fourth points of error, the county contends that the trial court lacked jurisdiction over the whistleblower claim because Farrar failed to meet the exhaustion requirements of the Whistleblower Act. The county asserts that Farrar never invoked meaningful grievance procedures because he failed to allege to the grievance committee that he was demoted in retaliation for reporting a violation of law. In the alternative, the county avers that, to exhaust all "grievance or appeal" procedures, Farrar must have appealed the decision of the grievance committee to the county commissioner's court. Finally, the county urges that Farrar's claim is barred by limitations because the ineffective grievance process never triggered the statute's tolling provisions. We need consider only the first two arguments.

### 1. *Invocation of grievance*

We reject the county's assertion that Farrar failed to exhaust his remedies because he did not specifically allege his whistleblower

**4.** *Bowles,* therefore, is distinguishable from the present case because it was a *suit against the county* for recovery of payment of fees which did not arise under another, more specific statute. In *Bowles,* the court noted the cases recognizing an exception to the presentment requirement when a party sues under the Texas Tort Claims Act, but stated that "in view of more recent cases on subject matter jurisdiction and notice require- ments, we express no opinion on the correctness of those holdings." *See Bowles,* 913 S.W.2d at 648 n. 9. Because we hold that compliance with the presentment requirement is not required when suing a county under the Whistleblower Act, we need not address whether failure to present a claim to the county under section 81.041(a) deprives the court of subject matter jurisdiction.

claim during the grievance process. After reviewing the testimony at the grievance committee hearing, we conclude that Farrar sufficiently presented the issue of reprisal to the grievance committee.

In his letter requesting the hearing, Farrar claimed that he was wrongfully demoted "without just cause." In his memorandum demoting Farrar, the commissioner listed nine areas in which he believed Farrar needed improvement as reasons for the demotion. Most of the reasons involved lack of management skills. During the hearing, however, Farrar pointed to one of the professed grounds for the demotion, "[l]ack of loyalty to job and employer," and told the committee:

> Farrar: ... on April 16th, Monday morning Commissioner said that if I find out who is doing this I will fire em and then he retracted his statement and I will get em fired.... And also on ... July 16 it was repeated and I would like to know why and his statement 'lack of loyalty to employees' that's here in the manual in a threatening way.

The county contends that other testimony by Farrar at the hearing constituted an affirmative denial of a potential whistleblower claim. When a committee member asked Farrar whether he had ever questioned the commissioner's orders, Farrar responded, "Just the dumping of the chemicals." The committee then inquired whether the commissioner made an issue of the chemicals:

> Committee: But he didn't make an issue to you for ...
>
> Farrar: No.
>
> Committee: [Transcriber's note reads: "(Couldn't understand)"] for you to do it.
>
> Farrar: No. No he didn't. Not to me. No he didn't. And I never heard any more about it.

We find this dialogue to be ambiguous; moreover, we do not think the dialogue can be construed to *negate* Farrar's prior testimony suggesting retaliation by the commissioner.

■ In determining that Farrar properly invoked the grievance process, we are mindful of the situation in which an employee may be faced with the employer's professed reasons that are pretextual for an unlawful employment decision. We note that the cases cited by the county stand for the rule that a party's motion for rehearing in an agency proceeding must be sufficiently definite to apprise the agency of the error claimed so that the agency can either correct the error or defend itself.[5] We find these cases inapplicable to this situation because they involve pointing out error in a prior proceeding after the complaining party has access to the decision-making process of the agency. By contrast, an employee who has been terminated must promptly invoke grievance procedures and often is not aware until later in the process that the employer's professed reasons for the decision were merely a pretext for retaliatory employment practices. Considering the grievance as a whole, and bearing in mind the pretextual situation commonplace in suits against employers, we conclude that Farrar's grievance provided the county with notice that it might be sued for retaliatory employment practices.

### 2. Appeal to commissioner's court

Next the county contends Farrar failed to exhaust the applicable grievance procedures because he did not appeal to the county commissioner's court. It asserts that its employee manual prescribes a three-step grievance process, which includes a meeting with the supervisor, a hearing before the grievance committee, and a final appeal to the commissioner's court.

Farrar rejoins that because the statute requires exhaustion of "applicable grievance *or* appeal procedures," his grievance before Commissioner Johnson and the committee satisfied the requirement. Farrar points out that the manual uses the terms "should" and "shall" when discussing the process involving the supervisor and the grievance committee, but states "the decision *may* be appealed by the employee to the Commissioner's Court." He thus concludes the county's grievance

---

5. The county cites *Texas Water Commission v. Dellana*, 849 S.W.2d 808, 810 (Tex.1993) and

*Suburban Utility Corporation v. Public Utility Commission*, 652 S.W.2d 358, 365 (Tex.1983).

system consists of a two-step process, with an optional appeal to the commissioner's court. Finally, Farrar contends he was not required to appeal to the commissioner's court because under its rules it could not have issued a decision before expiration of the 30–day tolling period contained in the Whistleblower Act.

■■■ We read the language in the Whistleblower Act, "exhaust any applicable grievance or appeal procedures," as requiring the employee to utilize all procedures in place for resolving disputes at the governmental entity, whether they are denominated "grievance" procedures or "appeal" procedures. *See Texas Air Control Bd. v. Travis County,* 502 S.W.2d 213, 215–16 (Tex.Civ.App.—Austin 1973, no writ) (holding that party has not exhausted until each authority provided for by the statute or rule has considered the decision).[6] This Court has recognized several policies served by the exhaustion requirement:

> [An] eminently practical reason for requiring exhaustion of remedies is that the complaining party may be successful in vindicating his rights in the administrative process and never have to resort to court. Notions of administrative autonomy require further that the agency be given first opportunity to discover and correct its own errors.

*Id.* at 215.

We find the policies of providing the local body an opportunity to correct its errors and of promoting judicial economy to be particularly influential in suits against public entities. We have held that the Whistleblower Act has a twofold purpose: (1) protecting public employees from retaliation by their employer when, in good faith, the employee reports a violation of law, and (2) securing lawful conduct on the part of those who direct and conduct the affairs of public bodies. *See Travis County v. Colunga,* 753 S.W.2d 716, 718–19 (Tex.App.—Austin 1988, writ denied); *see also Castaneda v. Texas Dep't of Agric.,* 831 S.W.2d 501, 501 (Tex. App.—Corpus Christi 1992, writ denied). In order to achieve this purpose, the statutory cause of action constitutes a waiver of sovereign immunity. *See Texas Dep't of Human Serv. v. Green,* 855 S.W.2d 136, 143 (Tex. App.—Austin 1993, writ denied) (holding codified by Tex.Gov't Code Ann. § 554.0035 (West Supp.1996)). Certainly under these circumstances, the legislature intended that the governmental entity should be afforded the opportunity to correct its own errors by resolving disputes before being subjected to the expense and effort of litigation.[7] *See City of San Antonio v. Heim,* 932 S.W.2d 287 (Tex.App.—Austin 1996, no writ h.); House Research Organization, Bill Analysis, Tex. H.B. 1405, 71st Leg., R.S. (1989) (hereinafter "Bill Analysis").[8] Indeed, the county's employee manual itself stated that "[t]he purpose of the grievance procedure is to settle grievances between the County and employees as quickly as possible and at as low an administrative level as possible, so as to assure efficient work operations and maintain employee morale."

■■■ We are not persuaded that the employee manual makes an appeal to the commissioner's court optional by stating that the decision of the grievance committee *may* be appealed. The supreme court has rejected a similar semantic argument in holding that

---

6. We do not by this decision incorporate the intricacies of the exhaustion doctrine of administrative law into suits under the Whistleblower Act. The Act provides a scheme for protecting employees from retaliation which is notably different from a traditional administrative system. Ordinarily a statutorily created agency's final decision is subject to judicial review under a substantial evidence standard of review. Under the Whistleblower Act, an employee is entitled, after exhausting remedies provided by the employing public entity, to institute a civil cause of action against the employer.

7. We note that the county was assessed over $80,000 in attorneys' fees at the conclusion of this litigation.

8. House Bill 1405 contained the amendment which added the exhaustion requirement. The committee stated

> Often, only the immediate supervisor or co-workers know about the allegations of retaliation. This bill would ensure that those higher up in the agency are alerted to the problem and can act under grievance procedures already in place.

administrative remedies must first be exhausted before filing suit under the Human Rights Act. *See Schroeder*, 813 S.W.2d at 486–87. The issue before the court in *Schroeder* was whether a person claiming an unlawful employment practice could file suit without first filing an administrative complaint with the statutorily created commission. Unlike the Whistleblower Act, the Human Rights Act contains no explicit exhaustion requirement, but merely states that an aggrieved party *"may* file with the commissioner a complaint." *Id.* Because the court found that exhaustion of administrative remedies was consistent with the overall policy of the statute favoring informal administrative procedures, it interpreted *"may* file" to provide exhaustion of administrative remedies as a statutory prerequisite to filing a civil action alleging violations of the Human Rights Act. Likewise, we believe the county, by stating that an aggrieved party *may* appeal the decision of the grievance committee, intended to mandate an appeal to the commissioner's court as the final step in its scheme for resolving employment disputes at the county level.

We thus conclude that Gregg County provided for a three-step, not a two-step, grievance procedure. Under the exhaustion requirement of the Whistleblower Act, Farrar was required to exhaust all three steps. This is particularly true in light of our holding that the statute's exhaustion requirement supplants the ordinary presentment required under the Local Government Code. Unless Farrar completes the third step, he has not advised the county of his claim. Certainly the commissioner's court is the body most capable of addressing and correcting retalia-

tory tactics at the county level. Given the exhaustion language in the statute, the grievance procedures established by Gregg County, and the legislative intent of the Whistleblower Act, Farrar was required to afford the county an opportunity to correct the retaliation complained of before he filed suit.

▮▮▮ Finally, we reject Farrar's argument that the apparent inability of the commissioner's court to issue a decision before expiration of the 30–day tolling period relieved him of his obligation to file an appeal with that body.[9] The statute provides that exhaustion of internal remedies is not required "if a decision is not rendered within 30 days of initiation." Tex.Rev.Civ.Stat.Ann. 6252–16a, § 3(e). Farrar contends this provision entitles the employee to "opt out" of the exhaustion process altogether if the public entity cannot render a final decision within the 30–day period. Conversely, we interpret section 3(e) to mean the employee is not required to wait more than 30 days for a final *decision* before filing suit. *See* Bill Analysis (stating the 30–day deadline protects the employee from unfair delays). Uncertainty about the employer's ability to render a final decision within 30 days does not permit the employee to forego *instituting* the next step in the grievance process. *See Beiser v. Tomball Hosp. Auth.*, 902 S.W.2d 721, 724 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (holding that invocation of uncertain grievance procedures tolled limitations period).[10] The statute does not prevent the commissioner's court from notifying Farrar of a hearing, holding the hearing, and rendering its decision even after the institution of Farrar's suit. Farrar was required to give the com-

9. Farrar's argument proceeds thus: Farrar instituted the grievance process on July 23 by meeting with Commissioner Johnson to contest the demotion. At the time the grievance committee rendered its decision, 18 of the 30 days allowable for tolling had passed. The manual requires the employee to appeal within seven working days of the grievance committee's decision. If Farrar had waited all seven working days to file his appeal, the commissioner's court would have had only three days in which to complete the process, whereas it was required under the manual to give Farrar at least five days notice of the appellate hearing.

10. Although apparently the basis in the present suit for the trial court's reversal of the j.n.o.v., *Beiser* supports our holding. In *Beiser* it was unclear whether the employer had a post-termination grievance procedure, or if so, what it entailed. The court held that where the employee had notified the employer that he was invoking the procedure and the employer had 30 days in which to conclude it, the employee's whistleblower suit was not barred by the statute of limitations where he filed suit on the 120th day after the termination. Unlike in *Beiser* where the grievance procedures were unclear, the county had clear procedures but Farrar failed to invoke them.

missioner's court the opportunity to hold its hearing, to be apprised of the fact that he planned to file suit against the county, and to correct the alleged retaliatory employment decision on its own.

■ A party who brings suit based entirely on a statutory cause of action must comply with the statutory prerequisites, which are mandatory and exclusive. *See Schroeder*, 813 S.W.2d at 485; *Green v. Aluminum Co. of Amer.*, 760 S.W.2d 378, 380 (Tex.App.—Austin 1988, no writ). Failure to comply with the statutory requirements deprives the court of jurisdiction. *See Schroeder*, 813 S.W.2d at 485; *Green*, 760 S.W.2d at 380. Because Farrar failed to exhaust the remedies prescribed by the county, the trial court lacked jurisdiction to hear his whistle-blower suit. We sustain point of error three. Accordingly, we find it unnecessary to address point of error four, concerning the statute of limitations, and points of error five and six concerning the exclusion of evidence.

Because we have concluded that the trial court lacked jurisdiction over Farrar's suit, we sustain the county's seventh point of error contending the trial court lacked jurisdiction to enter sanctions against it. *See City of Garland v. Louton*, 691 S.W.2d 603, 605 (Tex. 1985) (upon finding that trial court lacked jurisdiction, appellate court can take no other action than to reverse the trial court judgment and dismiss the cause); *Gregg County Appraisal Dist. v. Laidlaw Waste Syst., Inc.*, 907 S.W.2d 12, 21–22 (Tex.App.—Tyler 1995, writ denied) (trial court's lack of jurisdiction to hear appeals from appraisal review board also deprived it of jurisdiction to assess sanctions against county appraisal district for alleged discovery abuses); *see also Anderson v. Anderson*, 786 S.W.2d 79, 81 (Tex.App.—San Antonio 1990, no writ).

## CONCLUSION

Because we sustain the county's third point of error and conclude the trial court lacked jurisdiction to hear the cause, we reverse the judgment of the trial court and dismiss the cause.