TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00286-CV






City of Austin, Appellant



v.



Ray L. Ender, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 95-09218, HONORABLE DERWOOD JOHNSON, JUDGE PRESIDING







 The City of Austin brings an interlocutory appeal contending that the district court
erroneously denied its plea to the jurisdiction. See Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(8) (West Supp. 2000). Raising a single issue, the City argues that the district court
did not have subject matter jurisdiction over Ender's whistleblower lawsuit. We will affirm the
district court's denial of the City's plea to the jurisdiction.


Background


 From May 3, 1987 to May 20, 1995, Ender was employed by the Austin Police
Department as a motorcycle officer. On May 1, 1995, Ender's supervisor, Senior Sergeant Sam
Warren, threatened him with a job transfer allegedly because of his low activity in writing traffic
tickets. Ender believed that Warren was competing with other shifts in the motorcycle division
to see who could write the most tickets and, along with Warren's supervisor Deputy Chief Pulatie,
maintained an informal system that evaluated officers with regard to how many tickets they wrote. 
Ender responded to Warren's threat by informing him that ticket quotas were illegal.(1) Also on
May 1, Ender reported to Captain Joe Riffe that Warren was threatening to transfer him for not
issuing enough tickets and that any such ticket quota system was illegal. On May 5, Ender
reported the alleged illegal ticket quota system to an assistant city attorney. On May 14, Ender
also reported Warren's threat of transfer to Pulatie and informed him that the ticket quota system
was illegal. Finally, on May 19, Ender reported to the Department's Internal Affairs Division that
Warren had threatened to transfer him under an illegal ticket quota system. On May 20, Ender
was transferred to the Patrol Division.

 On June 7, Ender initiated the formal grievance process. In his own handwriting,
he completed the Department's fill-in-the-blank grievance form. Ender completed the first section
which asked for identification including name, employee number, date, division, immediate
supervisor, date of the incident and any witnesses. In the second section, titled "Describe
Grievance," Ender wrote the following:


I was transferred on May 20, 1995 from my position as a motorcycle patrol
[officer] to the patrol division David 300 series. I believe my transfer was
unlawful pursuant to V.C.S. 6701D-25, which prohibits ticket quotas regarding
traffic offenses. I was told by S. Sgt. S. Warren that I was being transferred due
to low "activity" not writing enough hazardous tickets.


In the third section, titled "Describe How This Grievance Could Be Resolved," Ender wrote the
following:


Being placed back on motorcycle patrol and S. Sgt. S. Warren transferred as a
supervisor from motorcycle patrol.




The form included a notation about when the grievance was forwarded to a supervisor and
included the supervisor's initials. Finally, Ender signed the form on the employee signature line.
After thirty-one days passed and the Department had not ruled on his grievance, Ender filed suit
in district court alleging a statutory whistleblower claim.

 In the lawsuit, Ender alleged that he suffered retaliation in the form of a transfer
in job assignments from the Motor Division to the Patrol Division with the loss of certain benefits. 
He alleged that he observed an illegal ticket writing quota system and promptly reported the illegal
system in good faith to an appropriate law enforcement authority in accordance with the
Whistleblower Act.(2) He claimed that he timely filed a grievance with the Department and because
thirty-one days had passed since filing his grievance and the Department had not rendered a final
decision, he was authorized to sue the City under the Whistleblower Act.(3) Ender requested that
after a hearing the district court permanently enjoin the Department from further discrimination
due to the reporting of violations of law and return him to his former position in the motorcycle
division.

 The City answered and moved for summary judgment. The City claimed that Ender
was transferred because of job performance problems, which admittedly included low ticket-writing productivity. In its motion for summary judgment, the City claimed that as a matter of
law Ender's reports did not cause his transfer. The district court granted summary judgment in
favor of the City. On appeal, this Court reversed the judgment holding that the City failed to
conclusively prove that Ender's reports did not cause his transfer and remanded the cause to the
district court for further proceedings. See Ender v. City of Austin, No. 03-97-00329-CV (Tex.
App.--Austin October 23, 1997, no pet. h.) (not designated for publication).

 After remand, the City filed a motion titled "plea to the jurisdiction, motion for
summary judgment, and/or motion for no evidence summary judgment." The City contended that
the district court lacked subject matter jurisdiction because, under the statutory scheme of the
Whistleblower Act, Ender failed to exhaust the City's grievance and appeal procedures before
filing suit.(4) Specifically, the City contended that despite Ender's timely filed grievance and his
many reports that he believed he was subjected to an illegal ticket quota system, he failed to
present to the City by way of a written grievance any claim asserting retaliation or discrimination
for reporting a violation of law. The City argued that because Ender did not first present a
specific claim of retaliation or discrimination to the City he failed to exhaust the City's grievance
procedures regarding such a claim and the district court was without jurisdiction over the
whistleblower claim. The district court denied the City's plea to the jurisdiction and the City
timely appeals.


Discussion


 On appeal, the City raises the same issue it raised below--that the district court did
not have subject matter jurisdiction over the lawsuit because Ender did not specifically present a
whistleblower claim in a written grievance through the Department's formal grievance process
before filing suit. The City argues that because Ender's written grievance did not contain any
reference to discrimination or retaliation he did not meet the statutory requirement that he first
exhaust the City's grievance process before filing suit.

 A district court's jurisdiction over the subject matter of a case is determined solely
from the good faith allegations found in the plaintiff's pleadings. See Texas Ass'n of Bus. v. Texas
Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). The plaintiff must allege facts that
affirmatively demonstrate the court's jurisdiction to hear the cause. Richardson v. First Nat'l Life
Ins. Co., 419 S.W.2d 836, 839 (Tex. 1967). Unless the petition affirmatively demonstrates an
absence of jurisdiction, the trial court must construe the petition liberally in favor of jurisdiction.
See Peek v. Equipment Serv. Co., 779 S.W.2d 802, 804 (Tex. 1989). Good faith allegations are
to be taken as true, unless the defendant pleads and proves that the petition's allegations were
fraudulently made to confer jurisdiction. Flowers v. Lavaca County Appraisal Dist., 766 S.W.2d
825, 827 (Tex. App.--Corpus Christi 1989, writ denied). If a trial court lacks subject matter
jurisdiction, it has no discretion and must dismiss the case. Id.

 We review the district court's determination of subject matter jurisdiction de novo. 
Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). The pleadings relevant to a
review of a plea to the jurisdiction include amended petitions, the plea to the jurisdiction, and
responses filed in connection with a defendant's plea to the jurisdiction. See Janik v. Lamar
Consol. Indep. Sch. Dist., 961 S.W.2d 322, 324 (Tex. App.--Houston [1st Dist.] 1997, writ
denied). Our review included Ender's first amended petition, the City's plea to the jurisdiction
and the evidence attached to the motion as well as Ender's response and affidavit in opposition to
the motion. We note that the City did not allege or present any evidence that Ender's
jurisdictional allegations were fraudulent or were not made in good faith.

 The exhaustion provision of the whistleblower statute in effect at the time Ender
was transferred provided: (a) a local government employee must exhaust the government's
grievance procedures before suing under the Act; and (b) the employee must invoke the grievance
procedure not later than the 90th day after the date on which the alleged violation of this chapter
either occurred or was discovered by the employee through reasonable diligence.(5) Additionally,
the statute provided that exhaustion of the grievance process is not required if a final decision is
not rendered before the thirty-first day after the date the employee initiated the grievance. Id.

 Although Ender's handwritten grievance did not include the words "retaliation" or
"discrimination," he reported repeatedly that he was being transferred on an illegal basis. The
statute does not require an employee to use particular words when filing a grievance nor will we
impose such a requirement. Additionally, in the section suggesting ways to resolve his grievance,
Ender asked to be returned to his former position as a motorcycle officer. This is the type of
remedy typically sought under a whistleblower claim.(6) 

 In addressing the purpose of the exhaustion statute, we have noted that "requiring
the exhaustion of grievance and appeal processes as provided in the whistleblower statute
encourages compliance through voluntary resolution, conference, conciliation and informal
processes other than litigation." See Gregg County v. Farrar, 933 S.W.2d 769, 773 (Tex.
App.--Austin 1996, writ denied) (citing Schroeder v. Texas Iron Works, Inc., 813 S.W.2d 483,
486 (Tex. 1991)). Additionally, this Court has recognized several policies served by the
exhaustion requirement:


An eminently practical reason for requiring exhaustion of remedies is that the
complaining party may be successful in vindicating his rights in the administrative
process and never have to resort to court. Notions of administrative autonomy
require further that the agency be given first opportunity to discover and correct its
own errors.



Id. (quoting Texas Air Control Bd. v. Travis County, 502 S.W.2d 213, 215-16 (Tex. App.--Austin
1973, no writ)). Indeed, the Whistleblower Act has a twofold purpose: (1) protecting public
employees from retaliation by their employer when, in good faith, an employee reports a violation
of law, and (2) securing lawful conduct on the part of those who direct and conduct the affairs of
public bodies. See Travis County v. Colunga, 753 S.W.2d 716, 718-19 (Tex. App.--Austin 1988,
writ denied). As we have noted, the legislature intended that the governmental entity be afforded
the opportunity to correct its own errors by resolving disputes before being subjected to the
expense and effort of litigation. See Gregg County, 933 S.W.2d at 775 (citing City of San Antonio
v. Heim, 932 S.W.2d 287, 293 n.12 (Tex. App.--Austin 1996, writ denied)).

 Ender reported to various supervisors up his chain of command that he was being
subjected to an illegal ticket writing quota system. He also reported the illegal quota system
outside his chain of command by reporting the incident to a City attorney and to the Department's
internal affairs division. The City asserts that Ender complained that he was transferred for
writing too few tickets, rather than in retaliation for reporting that the quota system applied to him
was illegal. The grievance form asked him to describe his grievance in his own words. Ender
stated: "I believe my transfer was unlawful pursuant to V.C.S. 6701D-25, which prohibits ticket
quotas regarding traffic offenses." The causation for Ender's transfer may be an issue in the trial
of this cause. However, we hold that the description of his grievance, coupled with Ender's
numerous reports of the illegality of the "quota system" being applied to him, gave the City
sufficient notice of a potential whistleblower claim to satisfy the exhaustion requirement of the
statute. We refuse to hold handwritten complaints drafted by employees to the same exacting
standard we might apply to pleadings drafted by attorneys. Under the whistleblower statute, the
City had thirty-one days to investigate the details of Ender's grievance about his transfer and
resolve it internally without litigation. Because the City failed to render a final decision on
Ender's grievance within thirty-one days, he was entitled to file his whistleblower action against
the City. See Domingues v. City of San Antonio, 985 S.W.2d 505, 510 (Tex. App.--San Antonio
1998, pet. denied).

 We hold that Ender satisfied the exhaustion requirement of the whistleblower
statute. We overrule the City's contention to the contrary and affirm the district court's order
denying the City's plea to the jurisdiction.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: October 5, 2000

Publish


1.   See Act of June 16, 1991, 72d Leg., R.S., ch. 657, 1991 Tex. Gen. Laws 2406 (statutory
provision in effect at time of Ender's report appeared at Tex. Rev. Civ. Stat. Ann. art. 6701d-25;
current provision at Tex. Transp. Code Ann. § 720.002 (West 1997)) (prohibiting use of ticket
quota system). 
2.    See Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 610. 
This provision was amended in 1995 and effective June 15, 1995. For adverse personnel action
that occurred before the effective date of the 1995 amendments the former law is continued in
effect. See Act of May 25, 1995, 74th Leg., R.S., ch. 721, § 11, 1995 Tex. Gen. Laws 3812,
3814. In this case, the former law applies. The current amended version appears at Tex. Gov't
Code Ann. § 554.002 (West Supp. 2000).
3.    See Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 610
(current statutory provision appears at Tex. Gov't Code Ann. § 554.006 (West Supp. 2000)). 
4.   See Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 610
(current amended version appears at Tex. Gov't Code Ann. § 554.006(a) (West Supp. 2000)). 
5.   See Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 610
(current statutory version appears at Tex. Gov't Code Ann. § 554.006(a) (West Supp. 2000)). 
6.   See Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 610
(current amended statutory version appears at Tex. Gov't Code Ann. § 554.003(b)(1) (West Supp.
2000)). 


d. v. Travis County, 502 S.W.2d 213, 215-16 (Tex. App.--Austin
1973, no writ)). Indeed, the Whistleblower Act has a twofold purpose: (1) protecting public
employees from retaliation by their employer when, in good faith, an employee reports a violation
of law, and (2) securing lawful conduct on the part of those who direct and conduct the affairs of
public bodies. See Travis County v. Colunga, 753 S.W.2d 716, 718-19 (Tex. App.--Austin 1988,
writ denied). As we have noted, the legislature intended that the governmental entity be afforded
the opportunity to correct its own errors by resolving disputes before being subjected to the
expense and effort of litigation. See Gregg County, 933 S.W.2d at 775 (citing City of San Antonio
v. Heim, 932 S.W.2d 287, 293 n.12 (Tex. App.--Austin 1996, writ denied)).

 Ender reported to various supervisors up his chain of command that he was being
subjected to an illegal ticket writing quota system. He also reported the illegal quota system
outside his chain of command by reporting the incident to a City attorney and to the Department's
internal affairs division. The City asserts that Ender complained that he was transferred for
writing too few tickets, rather than in retaliation for reporting that the quota system applied to him
was illegal. The grievance form asked him to describe his grievance in his own words. Ender
stated: "I believe my transfer was unlawful pursuant to V.C.S. 6701D-25, which prohibits ticket
quotas regarding traffic offenses." The causation for Ender's transfer may be an issue in the trial
of this cause. However, we hold that the description of his grievance, coupled with Ender's
numerous reports of the illegality of the "quota system" being applied to him, gave the City
sufficient notice of a potential whistleblower claim to satisfy the exhaustion requirement of the
statute. We refuse to hold handwritten complaints drafted by employees to the same exacting
standard we might apply to pleadings drafted by attorneys. Under the whistleblower statute, the
City had thirty-one days to investigate the details of Ender's grievance about his transfer and
resolve it internally without litigation. Because the City failed to render a final decision on
Ender's grievance within thirty-one days, he was entitled to file his whistleblower action against
the City. See Domingues v. City of San Antonio, 985 S.W.2d 505, 510 (Tex. App.--San Antonio
1998, pet. denied).

 We hold that Ender satisfied the exhaustion requirement of the whistleblower
statute