TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




ON MOTION FOR REHEARING







NO. 03-08-00582-CV





Bastrop County, Texas, Appellant


v.


Denver Samples; One Martin's Meadow, Ltd.; Main Street, Ltd.; James E. Garon; and
James E. Garon & Associates, Inc., Appellees





FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT

NO. 26,567, HONORABLE CHARLOTTE HINDS, JUDGE PRESIDING









NO. 03-08-00648-CV





In re Bastrop County, Texas





ORIGINAL PROCEEDING FROM BASTROP COUNTY






O P I N I O N


 Bastrop County, Texas, appellant and relator in these proceedings, has filed a motion
for rehearing. We withdraw our opinion and judgment of March 20, 2009, and substitute this
opinion. We overrule Bastrop County's motion for rehearing.

 Bastrop County filed an interlocutory appeal, see Tex. Civ. Prac. & Rem. Code
Ann. § 51.014(a)(8) (West 2008), and petition for writ of mandamus, see Tex. R. App. P. 52.3,
complaining of the trial court's refusal to rule on the County's plea to the jurisdiction and abatement
of the underlying proceeding to allow appellee and real party in interest Denver Samples to exhaust
administrative remedies. (1) We reverse the trial court's abatement order and affirm the court's implicit
denial of the plea to the jurisdiction. We dismiss the County's petition for writ of mandamus.

 The underlying lawsuit was brought by Samples against the County, One Martin's
Meadow, Ltd., Main Street, Ltd., James Garon, and James E. Garon & Associates, Inc. In that suit,
Samples alleged that in 1960 he bought nineteen acres along State Highway 21. Sometime
after 1960, James and Rozelle Martin bought about 145 acres east of Samples's property. Samples
gave the Martins verbal permission to use a 62-foot stretch of Samples's property to gain access from
the Martin property to SH21. The throughway was not paved, but over time, it became "impressed
with tire ruts while the native shrubs and grasses continued to grow between the ruts." In 2002, after
James Martin died, Rozelle Martin sold the property to One Martin's Meadow, which subdivided
the property for a housing development. The deed to One Martin's Meadow did not purport to
include any interest in the throughway across Samples's property. However, One Martin's Meadow,
relying on a survey performed by James Garon and Garon's surveying firm and on a county roadmap
prepared by the County, paved the throughway across Samples's property to SH21. Samples was
never contacted for permission to use his property for highway access. 

 Samples sued One Martin's Meadow and Main Street, Ltd., which constructed homes
in the subdivision, for trespass to try title. Main Street filed a cross-claim against One Martin's
Meadow, asserting that One Martin's Meadow had represented to Main Street that the subdivision
had access rights across Samples's property to the highway. Samples later dismissed his claims
against Main Street. One Martin's Meadow filed a third-party petition against Garon and his firm,
alleging that they were negligent in their survey of the property and had certified that the property
had access to and from SH21 across the throughway, which One Martin's Meadow believed was
named Martin's Crossing Drive. In March 2008, Samples amended his petition to add the County
as a defendant, alleging that in June 2007, the County, through its commissioners court, created a
roadmap that improperly designated Martin's Crossing Drive as a road in which the County had a
public interest. Samples sought to contest the County's designation of the throughway as a county
road and asked the trial court to set aside the County's designation in the County's roadmap and to
require the County to redraw the map. The County filed a plea to the jurisdiction, asserting that
under chapter 258 of the transportation code, Samples was required to contest the roadmap at the
commissioners-court level before he could sue in the trial court to have the map redrawn. See
Tex. Transp. Code Ann. §§ 258.001-.007 (West Supp. 2008). Following a hearing on the County's
plea, the trial court signed an order abating the proceeding to allow Samples "the opportunity to
pursue the administrative remedies available under Chapter 258." 

 In its interlocutory appeal, the County argues that the trial court should have granted
the plea and dismissed the suit rather than abating it because Samples did not exhaust his
administrative remedies before suing the County. In its mandamus petition, the County argues that
the trial court abused its discretion in refusing to rule on the County's plea to the jurisdiction.

 A county's commissioners court may propose a roadmap showing all roads in which
the county "claims the existence of a public interest." Id. § 258.002(a). A commissioners court
proposing a county roadmap must hold a public meeting, during which a person asserting a private
interest in a road may protest the road's inclusion on the map. Id. § 258.002(b). A person asserting
a private interest may also file a written protest at any time before the public hearing. Id. If a protest
is made or filed, the commissioners court shall appoint a jury to determine whether the public has
an interest in the contested road. Id. The commissioners court is required to publish notice of the
hearing in at least one newspaper of general circulation in the county. Id. § 258.002(c). A person
claiming a private interest in a road in which the county asserts a public interest "may contest the
inclusion of the road in the county road map by filing a suit in a district court in the county in which
the road is located not later than the second anniversary of the date on which the county road map
including the road was adopted." Id. § 258.004(a). "The county has the burden of proving that the
county has continuously maintained . . . the road in question." Id. § 258.004(b). 

 The County argues that because Samples did not appear at the hearing on the map or
file a written protest before the hearing, he has not exhausted the available administrative remedies
and therefore may not sue under section 258.004. The County contends that section 258.002(b),
which states that a person asserting a private interest in a road claimed to be public "may" file a
written protest or appear at the roadmap hearing, should be read as requiring the landowner to
protest at or before the hearing before he may sue under section 258.004. As support, the County
points to other statutes in which "may" has been interpreted as setting out a mandatory precondition
to suit. However, those statutory frameworks are very different than the one at issue here. 

 In Schroeder v. Texas Iron Works, Inc., the supreme court concluded that by stating 
that an aggrieved person "may file" a complaint with the Texas Commission on Human Rights, the
Commission on Human Rights Act meant that the person must have exhausted his administrative
remedies before filing suit. 813 S.W.2d 483, 487-88 (Tex. 1991). It reached this conclusion after
considering that the Act was intended to advance policies set out in federal anti-discrimination
statutes, which require "exhaustion of administrative remedies prior to litigation"; established "a
comprehensive administrative review system"; and used the date a complaint was filed with the
commission to determine the deadline for filing suit in a trial court. See id. at 485-87. In
Gregg County v. Farrar, we noted that the Texas Whistleblower Act required an aggrieved person
to "exhaust any applicable grievance or appeal procedures" before filing suit, regardless of language
in an employee manual that a grievance committee decision "may be appealed." 933 S.W.2d 769,
774-76 (Tex. App.--Austin 1996, writ denied). (2) Similarly, the education code and the local
government code's provisions related to zoning decisions, which use "may" in discussing certain
administrative procedures or the filing of an appeal, both require a complainant to first exhaust
available administrative remedies before filing suit. See Tex. Educ. Code Ann. § 7.057, 21.209,
.301, .307 (West 2006) (provisions related to appeals available at various levels generally say that
aggrieved person "may appeal" to next level in process); Tex. Loc. Gov't Code Ann. §§ 211.010(a),
.011(a) (West 2008) (person aggrieved by zoning decision may appeal to board of adjustment, and,
after decision by board, "may" seek judicial review); Jones v. Clarksville Indep. Sch. Dist.,
46 S.W.3d 467, 470-71 (Tex. App.--Texarkana 2001, no pet.) (interpreting "may" in section 7.057
of education code to mean that "aggrieved person may appeal, and if an appeal is taken, it must be
to the commissioner if the matter is one within the scope of the agency's review powers"). 

 The statutes to which the County cites differ in significant ways from chapter 258 of
the transportation code. The other statutory provisions set out fairly comprehensive schemes for
filing and pursuing administrative complaints through a well defined process. More importantly,
those statutes address complaints filed by an individual in response to a specific adverse action, and
the time in which a complainant may pursue administrative remedies generally begins to run when
he learns he has a grievance. See Tex. Gov't Code Ann. §§ 554.002-.006 (West 2004); Tex. Lab.
Code Ann. §§ 21.201-.262 (West 2006); Tex. Loc. Gov't Code Ann. §§ 211.010(a), .011(a), (b);
Tex. Educ. Code Ann. § 7.057, 21.209, .301, .307. But see Tex. Educ. Code Ann. § 7.057 (statute
does not specify time to file appeal); Tex. Loc. Gov't Code Ann. § 211.010(b) (appeal to board of
adjustment "must be filed within a reasonable time"); Westheimer Indep. Sch. Dist. v. Brockette,
567 S.W.2d 780, 789 (Tex. 1978) ("Texas law is firmly established that, when the statute fails to
prescribe such a time limit, an appeal must be taken within a reasonable time.").

 For instance, under the whistleblower act, an individual may file a complaint alleging
governmental retaliation for a good-faith report of a violation of law within ninety days after the
retaliation occurred or was discovered through reasonable diligence, Tex. Gov't Code Ann.
§ 554.006, and under the commission on human rights act, an individual may file a complaint
alleging illegal employment practices within 180 days of the alleged illegal practice, Tex. Lab. Code
Ann. §§ 21.201, .202. Under the local government code, municipalities must both post notice in the
local newspaper and send notice of a proposed zoning change to each property owner who might be
affected, and a person aggrieved of a board decision may then appeal through the administrative
process. Tex. Loc. Gov't Code Ann. §§ 211.007, .010, .011 (West 2008).

 Chapter 258 of the transportation code, on the other hand, which implicates
constitutionally protected property interests, does not ensure that an individual who stands to be
adversely affected by an assertion of a public interest in a road will receive notice commensurate
with the property interest at stake before the time to register a protest expires. It requires that notice
of a hearing on a proposed map be run in the local newspapers in advance of the hearing; the map
is not included in the notice but is made available for study at a public location. Tex. Transp. Code
Ann. § 258.002(c), (d). It also requires that the commissioners court include "a notice of its intention
to consider adoption of the county road map with the ad valorem tax statements for the year before"
the map's adoption, including "a list of all roads in which the county will claim the existence of a
public interest," the date of the public hearing on the map's adoption, and a statement that the
property owner may protest under section 258.002(b). Id. § 258.005(a) (West Supp. 2008). The
same general notice is sent to all property owners in the county, however, and the statute does not
require specific, individual notice be provided to owners who will be individually affected. See id.

 The County's interpretation would in this instance violate state and federal
constitutional protections on property rights. The federal constitution "provides that 'private
property [shall not] be taken for public use, without just compensation,'" and "article I, section 17
of the Texas Constitution provides, in pertinent part, that no 'person's property shall be taken,
damaged or destroyed for or applied to public use without adequate compensation being made.'" 
Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 933 (Tex. 1998) (quoting U.S. Const. amend. V;
Tex. Const. art. I, § 17). Although there are several methods for acquiring private land for public
roads, they have in common at least two requirements--specific notice must be provided to the
affected property owners and compensation must be paid to property owners whose land is used for
public purposes. See id. at 939 (to deprive individual of property right, government must give notice
and meaningful opportunity to be heard); Koch v. Texas Gen. Land Office, 273 S.W.3d 451, 457-60
(Tex. App.--Austin 2008, pet. filed) (quoting Porretto v. Patterson, 251 S.W.3d 701, 708
(Tex. App.--Houston [1st Dist.] 2007, no pet.)) (noting that if government could claim immunity
by merely claiming title in individual's land, condemnation would be unnecessary and individual
would not receive compensation unless legislature granted permission to sue).

 The transportation code sets out several provisions related to a county's establishment
of and acquisition of private property for public roads. Residents may apply with their local
commissioners court for a new road. Tex. Transp. Code Ann. § 251.052(a) (West 1999); see also
id. § 251.053 (West 1999) (person without public road to property may apply for neighborhood road;
application must name "persons that would be affected by the establishment of the road"; each
affected property owner must be given notice of proposed road and informed of right to appear and
protest; if neighborhood road is established, property owners must be paid damages). If a
commissioners court decides to order a new road, it must appoint a "jury of view" of local property
owners, which must issue written notice of the time "it will lay out the road or assess damages
incidental to the opening of the road," giving notice to each property owner "through whose real
property the road may pass"; the property owner may present a written statement of the damages he
will incur and, if dissatisfied with the jury's decision and the commissioners court's award, appeal
the damages determination. Id. § 251.054(a), (e), (f), (g) (West 1999). (3) In a municipality, a county
may, with the municipality's consent, condemn property for county roads through an eminent domain
proceeding. Id. § 251.101 (West 1999). Finally, the property code sets out specific procedures and
requirements for condemning land through eminent domain. See Tex. Prop. Code Ann. §§ 21.001-.102 (West 2000 & 2004 & Supp. 2008) (statutes governing eminent domain in general). (4)

 Thus, under any other provision related to public use of private land, specifically use
for public roads, before a county may acquire a public interest in a private road, establish a new
county road, or access road across private land, the affected land owner must be given personal
notice of the proposed acquisition and the opportunity to protest and/or present evidence of the
owner's damages. See Tex. Transp. Code Ann. §§ 251.053, .054, .101, 281.006 (West 1999). More
importantly, a county is constitutionally and statutorily barred from taking private land for a public
road without paying the landowner for the privilege. See id. §§ 251.053(e), .054(e), (f), (g), .101,
281.002; see also Tex. Prop. Code Ann. §§ 21.014-.016, .018 (West 2004) (special commissioners
must be appointed to assess property owner's damages; each party "is entitled to written notice" of
damages hearing; party to condemnation proceeding may appeal special commissioners' findings),
21.041 (West 2000) (special commissioners must hear evidence related to value of land being
condemned and injury to landowner), 21.042 (West Supp. 2008) (special commissioners must assess
damages suffered by landowner); Mayhew, 964 S.W.2d at 933.

 Samples was not served with specific notice of the County's intent to take a public
interest in his private throughway, as required by the various condemnation statutes. See
Tex. Transp. Code Ann. §§ 251.053, .054, .101, 281.006. He was provided a notice in his ad
valorem tax statement, as required by section 258.005(b), that stated that Bastrop County intended
to claim a public interest in the roads listed. However, the notice was a general announcement sent
to all taxpayers in the county and did not specify that one of the roads runs across Samples's
property. Further, the list included more than 1,000 roads, and Samples had no reason to know he
should look for Martin's Crossing Drive or seek out the map to see whether the portion of the road
that runs across his property was shown as public. Further, section 258.005, which requires that
notice of a county's intention to adopt a road map be included in property tax statements, also
requires that in the year following the map's adoption, the commissioners court must include in tax
statements a second notice informing property owners of the map's adoption and (1) listing all the
roads in which the county claimed a public interest and (2) informing the property owner of the date
of the map's adoption and "the date on which the statute of limitations will bar a landowner from
filing a suit in district court to dispute the county's claim." Id. § 258.005(b). It makes little sense
to require a second notice if the first is sufficient to put owners on notice of the possible loss of their
property and their right to contest the claim of a public interest. 

 If we were to agree with the County's argument, the County would essentially be
allowed to take Samples's private road without satisfying the statutory requirements for a taking, and
chapter 258's roadmap provisions would trump the constitutionally mandated procedures for a
governmental taking. See Morgan v. Oliver, 82 S.W. 1028, 1030 (Tex. 1904) ("At common law
every proprietor holds his property subject to the right of the sovereign to take it for public use. That
right, under the Constitution of this state, is subject to the condition that compensation for the
property and for all damages incident to its taking must be assessed, and, except in case of the state
itself, must be paid for or secured.") 

 Instead, we conclude that, unlike the comprehensive statutory frameworks cited by
the County, the permissive language in chapter 258 of the transportation code is indeed permissive. (5) 
A property owner may file a protest at or before the hearing on a proposed map, which results in a
jury considering the matter and making a decision that is binding on the commissioners court. See
Tex. Transp. Code Ann. § 258.002(b). However, in the section titled, "Contest," the code provides
that a property owner has two years after the adoption of a map to file suit to amend the map, making
no reference to the protest option provided in section 258.002. See id. § 258.004(a). 

 We conclude that section 258.004 allows Samples to pursue his suit, which was
timely filed within two years of the County's adoption of the roadmap, without first having filed a
protest pursuant to section 258.002. We therefore reverse the trial court's order abating the
proceeding and affirm the court's implicit denial of the County's plea to the jurisdiction. We dismiss
the County's petition for writ of mandamus. 


 __________________________________________

 David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed in part; Reversed in part on Motion for Rehearing

Filed: May 8, 2009
1. The County and Samples agree that we have jurisdiction over the interlocutory appeal
because the trial court's order can be interpreted as implicitly or expressly denying the County's plea
to the jurisdiction. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008).
2. The current version of the whistleblower act provides that an employee "must initiate
action under the grievance or appeal procedures of the employing state or local governmental entity
. . . before suing under this chapter." Tex. Gov't Code Ann. § 554.006 (West 2004).
3. The "jury of view" method seems largely to have fallen by the wayside, with condemnation
being used more frequently. See David B. Brooks, 36 Texas Practice 2d County & Special District
Law, Roads & Bridges § 40.25 (2002) ("The county may proceed under its general eminent domain
statutory authority or under the Transportation Code, which includes the use of a jury of view. . . . 
[A]s it now stands, with the availability of the general condemnation statutes, there is no reason for
a county to open a road under the old jury of view method." (footnotes omitted)).
4. The transportation code also provides that a county of fewer than 50,000 people "may
acquire a public interest in a private road only by: (1) purchase; (2) condemnation; (3) dedication;
or (4) . . . adverse possession." Tex. Transp. Code Ann. § 281.002 (West 1999). In such a county,
the commissioners court "may not assert a public interest in a private road" without giving written
notice to the road's owner in person or by registered mail. Id. § 281.006 (West 1999). A person
asserting an interest in that road may sue in district court within two years after (1) a county
resolution declaring a public interest in the road or (2) the property owner is given notice of the
county's intention, whichever is later. Id. § 281.007 (West 1999). We recognize that
section 258.001 of the transportation code states that "[n]otwithstanding chapter 281, a county may
clarify the existence of a public interest in a road as provided by this chapter," id. § 258.001
(West Supp. 2008), but we do not believe that the legislature intended to allow a county subject to
chapter 281 to avoid notice and compensation provisions by availing itself of the roadmap
adoption process.
5. Our conclusion is supported by the bill analysis of H.B. 1117, which was enacted in 2003
as chapter 258 of the transportation code. See House Transp. Comm., Bill Analysis, Tex. H.B. 1117,
78th Leg., R.S. (2003). In that analysis, the committee noted that before chapter 258's enactment,
there was no statute of limitations on when a landowner could challenge the public or private status
of a road. Id. H.B. 1117 was intended to aid counties, which otherwise "will most likely lose in
court" in the future, when they will likely be "unable to provide 'live bodies' with firsthand
knowledge" of a road's genesis, resulting in counties losing the right to maintain what they consider
to be public roads, "endanger[ing] the rights of those interior landowners who use the road[s] to
access their propert[ies]." Id. Because it is difficult and prohibitively expensive for counties to
determine ownership of all properties that adjoin all county roads, H.B. 1117 was intended to allow
a county to adopt a proposed roadmap, placing notice of a hearing on the map in local newspapers. 
Id. "Landowners could protest in a public hearing or by mail. . . . After two years, if the landowner
does not protest, the road becomes the responsibility of the county. If, after that two year period, the
landowner decides to protest, the burden is on the landowner, not the county, to prove their case." 
Id. The committee stated that section 258.004


[a]uthorizes a person asserting a private right, title, or interest in a road in which a
public interest is asserted under this chapter to contest the inclusion of the road in the
County road map by filing a suit in a district court in the county in which the road is
located not later than the second anniversary of the date on which the county road
map including the road was adopted.

Id. The analysis does not suggest that a landowner must protest at or before the hearing in order to
avail himself of the contest provision in section 258.004 and, indeed, states that a landowner has
two years from the date the map is adopted to file suit protesting the inclusion of a road. See id.