# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-02-00798-CV

**Patricia Ruiz and Chantell Ruiz, Appellants**

**v.**

**Austin Independent School District, Andy Welch, Principal Darrell Baker, and Coach Lee Thompson, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. GN201207, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellants Patricia Ruiz and Chantell Ruiz (the "Ruizes") sued appellees Austin Independent School District, Andy Welch, Darrell Baker, and Lee Thompson (collectively "appellees"), alleging defamation and whistleblower causes of action. Appellees moved for summary judgment based on their defenses of (1) limitations, (2) governmental and statutory immunity, and (3) failure to exhaust administrative remedies. The trial court granted appellees' motion for summary judgment without specifying the basis for doing so, and the Ruizes appeal. We will affirm the trial court's summary judgment.

## BACKGROUND[1]

Patricia and Chantell Ruiz are mother and daughter, respectively. Both were employed by Austin Independent School District ("AISD") at the Johnston High School campus. Patricia worked as a hall monitor, and Chantell was a special education aide and freshman girls basketball coach; Chantell was supervised by head basketball coach Lee Thompson.

During the 2000 fall semester, Darrell Baker, principal of Johnston High School, received information that caused him to believe that Patricia was involved in an organized effort to remove Thompson from his position as head basketball coach at the high school. As a result, Baker directed Patricia not to interfere with the basketball program. On November 17, 2000, Chantell, accompanied by her mother, made a complaint to Principal Baker that Coach Thompson violated University Interscholastic League policy by using an ineligible player. Chantell later learned that despite Baker's assurances, he did not report the violation to the University Interscholastic League.

On January 2, 2001, at a high school basketball game, Chantell witnessed several female Johnston High School basketball players looking at playing cards with pictures of naked men on the cards. Chantell confiscated the cards and returned them to an adult relative of one of the players. Two weeks later, after learning about the incident from parents, AISD Area Superintendent Rosalinda Hernandez informed Principal Baker about the basketball players and the naked picture playing cards. Baker investigated the incident by contacting the parents who had reported the

---

[1] These facts are taken from the parties' briefs and summary-judgment evidence. Our factual summary includes some evidence that favors the judgment. *But see Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999) ("When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant."). We include this evidence only to provide a context for the proceedings in the trial court; our factual summary should not be construed as a conclusive finding of any fact.

2

incident and then by interviewing the students. Baker then met with Coach Thompson and Chantell, and Chantell stated that the girls had been using inappropriate playing cards at a basketball game, that she had taken up the playing cards, and had given them to the parent of one of the girls. Baker also discussed the lack of support Chantell had demonstrated toward Thompson throughout the season, and Chantell and Thompson were instructed to get along for the remainder of the season. Baker claims he told Chantell to support Thompson one hundred percent for the remainder of the season.

On January 31, Richard Welch, the communications director for AISD, was contacted by a television reporter for K-EYE News, seeking information about a coach at Johnston High School who was under investigation for "pornographic" playing cards. Welch informed the reporter that he did not know any facts related to her questions but would investigate and return her call. Welch then called Baker, who informed him that he was investigating a complaint involving the freshman girls basketball players but had not yet taken any administrative action.

On February 2, Thompson was preparing the gym for the school's annual parents' appreciation game and noticed that he had not seen Chantell or the freshman girls basketball team. He found Chantell in the parking lot with some of her players; Chantell was discussing game strategy with the players on their way into the gym for the game. Thompson approached the group, telling the students to go into the gym to help decorate for the game. A confrontation between Thompson and Chantell ensued, in which both were yelling. Thompson later told Baker about the confrontation, and Baker spoke to both Thompson and Chantell, as well as an assistant principal who witnessed the incident. Baker then suspended Chantell from her coaching duties.

3

According to Thompson, later that evening, when Chantell's parents came to pick her up at school, Chantell informed her parents of Baker's decision to suspend her from her coaching duties, and another confrontation ensued inside the gym between the Ruiz family (Chantell, Patricia, and Patricia's husband) and Thompson. Thompson claimed to have felt threatened by the Ruizes' raised voices, language, and conduct, and was concerned for his safety.[2]

Also on February 2, during its 10:00 p.m. newscast, K-EYE aired a story in which the reporter stated that at least two parents told the school board that sexually explicit playing cards were being passed through the hands of players and an unnamed coach. During the same report, the reporter asked Welch about the unnamed coach's response to the allegations, and he responded, "[S]he just did not deny it, that basically that it was, it was of an adult situation." Finally, Welch informed the reporter that the coach had been suspended pending further investigation. On February 3, 2001, the Austin American-Statesman ran a story about Chantell being relieved of her coaching duties after allowing her team to look at sexually explicit playing cards.

On February 5, Thompson relayed to Baker his version of the incident that occurred on the evening of February 2 in the gym. A parent who witnessed the incident corroborated Thompson's story. Baker decided to suspend both Chantell and her mother with pay. Baker further recommended to AISD that Chantell and Patricia be terminated for "failure to follow . . . directives that they cooperate and support Coach Thompson" and for conduct that was "inappropriate, unprofessional, was not conducive to the learning environment at Johnston High School, and further constituted disorderly and disruptive conduct on school premises."

---

[2] Chantell disputes Thompson's account of the events of that evening.

On February 7, the Austin American-Statesman ran a second story, reporting that Chantell was placed on administrative leave while school officials investigated allegations that she allowed members of the girls basketball team to look at playing cards depicting naked men. The article also reported that Chantell denied the allegations, saying she had confiscated the cards from a student.

On February 13, K-EYE news ran its second report in which a student basketball player stated that the players had shown Chantell a couple of cards and she just looked at the cards as the basketball players were laughing and making comments. The report also included a confirmation by Superintendent Hernandez that Chantell was relieved of her coaching responsibilities pending investigation.

On February 22, both Chantell and Patricia were terminated from their employment and were notified in writing by Michael Houser, the AISD executive director of human resources. In his letter, Houser informed Chantell and Patricia of their right to appeal AISD's termination decision. Neither Chantell nor Patricia filed an appeal.

On March 22, Chantell and Patricia filed a suit in Travis County district court against AISD, Welch, Baker, and Thompson, alleging violations of due process and freedom of speech under the federal constitution, violations of Chantell's and Patricia's civil rights, defamation, invasion of privacy, and a whistleblower claim. The case was removed to federal district court in April. On January 23, 2002, the federal court entered judgment in favor of appellees on all federal claims, declined to entertain supplemental jurisdiction over the Ruizes' state-law claims, and dismissed the Ruizes' state-law claims without prejudice to refiling.

On April 12, the Ruizes filed their second lawsuit in the Travis County district court, raising the same state-law causes of action against the same parties that had been raised and dismissed in their first suit—slander, libel, defamation, and whistleblower claims. Appellees filed a motion for summary judgment, alleging (1) limitations, (2) governmental and statutory immunity, (3) failure to exhaust administrative remedies, and (4) no authority to sue individuals under the whistleblower act. The trial court granted appellees' motion for summary judgment without specifying the grounds upon which it relied. This appeal followed.

## DISCUSSION

### *Standard of Review*

Rule of civil procedure 166a provides that summary judgment is properly granted only when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Missouri Pac. R.R. v. Lely Dev. Corp.*, 86 S.W.3d 787, 790 (Tex. App.—Austin 2002, pet. dism'd). Because the propriety of a summary judgment is a question of law, we review the trial court's decision de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 220 (Tex. 2003). The standards for review of a traditional summary judgment are well established: (1) the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. Tex. R. Civ.

6

P. 166a(c); *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 645-46 (Tex. 2000); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

A defendant seeking summary judgment must as a matter of law negate at least one element of each of the plaintiff's theories of recovery or plead and prove each element of an affirmative defense. *Missouri Pac.*, 86 S.W.3d at 790. Not until the defendant establishes its right to summary judgment does the plaintiff bear the burden of raising a fact issue. *Id*. If a trial court's order granting summary judgment does not specify the basis for the court's ruling, the summary judgment will be affirmed if any of the theories advanced by the movant are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

### *Limitations*

By their first two issues, the Ruizes argue that the trial court failed to properly apply the statute of limitations and incorrectly interpreted section 16.064 of the civil practice and remedies code. A defendant claiming entitlement to summary judgment on limitations grounds must conclusively establish his defense of limitations. *Knott*, 128 S.W.3d at 220; *Diaz v. Westphal*, 941 S.W.2d 96, 97-98 (Tex. 1997). If a plaintiff asserts the applicability of a tolling provision, the moving defendant bears the burden of negating its applicability as a matter of law. *Diaz*, 941 S.W.2d at 98.

The statute of limitations for defamation claims of slander and libel is one year from the day after the cause of action accrues. Tex. Civ. Prac. & Rem. Code Ann. § 16.002 (West 2002). A cause of action for libel or slander accrues on the date of communication. *Ellert v. Lutz*, 930 S.W.2d 152, 156 (Tex. App.—Dallas 1996, no writ); *Salazar v. Amigos Del Valle, Inc.*, 754 S.W.2d

7

410, 412 (Tex. App.—Corpus Christi 1988, no writ). The defendant must prove when the cause accrued. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990).

The Ruizes' defamation cause of action stemmed from the K-EYE news reports and the articles in the Austin American-Statesman. The Austin American-Statesman ran its last story about Chantell on February 7, 2001, and K-EYE ran its last report on February 13, 2001. The Ruizes were thus required to file their defamation claims by February 13, 2002. They filed their first lawsuit on March 22, 2001. That case was removed to federal court, and the federal court ultimately dismissed the defamation claims on January 23, 2002. The Ruizes filed their second suit on April 12, 2002, more than a year after the cause of action accrued. Thus, their cause of action was barred by the statute of limitations unless a tolling provision applies.

Section 16.064 of the civil practice and remedies code allows the tolling of the one-year statute of limitations under two conditions: (1) the first cause of action was dismissed because of a lack of jurisdiction in the trial court where the action was first filed; and (2) not later than the sixtieth day after the date of dismissal, the action is commenced in a court of proper jurisdiction. Tex. Civ. Prac. & Rem. Code Ann. § 16.064 (West 1997).[3] This Court has held that a federal court's

---

[3] Section 16.064 provides in full:

**§ 16.064. Effect of Lack of Jurisdiction**

(a) The period between the date of filing an action in a trial court and the date of a second filing of the same action in a different court suspends the running of the applicable statute of limitations for the period if:

    (1) because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment is set aside or annulled in a direct proceeding; and

refusal to exercise jurisdiction over a pendent state claim is tantamount to a dismissal for lack of jurisdiction. *Vale v. Ryan*, 809 S.W.2d 324, 327 (Tex. App.—Austin 1991, no writ). Even with the benefit of this tolling statute, however, the Ruizes failed to satisfy the statute of limitations, for their second lawsuit was not filed until seventy-nine days after the federal court dismissed the first lawsuit.

The Ruizes do not contest the date that their defamation cause of action accrued, nor the dates on which they filed suit. Instead, they argue that neither section 16.064 nor the statute of limitations should apply in this situation. They argue first that section 16.064 does not apply to them because the trial court in which the action was first filed—a Travis County district court—did not lack jurisdiction, as required by the statute. Although the suit was subsequently removed to federal court and that court refused to exercise jurisdiction, the Ruizes argue that the federal court is not the court in which the suit was first filed. And because section 16.064 does not apply to their situation, the Ruizes contend that a statute of limitations should likewise not apply. The appellees' removal of the suit to federal court is the reason the statute of limitations ran, argue the Ruizes, and appellees should not now be allowed to assert limitations as an affirmative defense since they are the parties that removed the suit and caused the statute of limitations to run. The Ruizes invoke principles of estoppel to support their argument.

---

(2) not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction.

(b) This section does not apply if the adverse party has shown in abatement that the first filing was made with intentional disregard of proper jurisdiction.

Tex. Civ. Prac. & Rem. Code Ann. § 16.064 (West 1997).

9

We refuse to abrogate the statute of limitations in the manner requested by the Ruizes. In setting a one-year statute of limitations for claims like the Ruizes', the legislature has determined that one year is a reasonable period of time for plaintiffs to present their claims. *Murray v. San Jacinto Agency, Inc*., 800 S.W.2d 826, 828 (Tex. 1990); *Anders v. Weslaco Indep. Sch. Dist.*, 960 S.W.2d 289, 292 (Tex. App.—Corpus Christi 1997, no pet.). We are not at liberty to change that to a period that the Ruizes believe is more reasonable. *See Anders*, 960 S.W.2d at 292. Moreover, we note that the federal court dismissed the Ruizes' state-law claims on January 23, 2002—before the statute of limitations had run on their defamation claims. Thus, they had an opportunity to comply with the statute of limitations, despite appellees' removal of the Ruizes' suit to federal court, but they failed to do so.

The Ruizes counter that in some instances, the legislative purpose behind the statute of limitations does not require the harsh result of its application, and this is such an instance. Indeed, the Ruizes correctly point out that this Court has recognized an equitable tolling theory, reasoning that "statutes of limitations should not apply in situations in which no party is misled or disadvantaged by an error in pleading." *Walls v. Travis County*, 958 S.W.2d 944, 946 (Tex. App.—Austin 1998, pet. denied) (recognizing that "[a]t times, courts apply limitations rules equitably rather than rigidly"); *see also Enserch Corp. v. Parker*, 794 S.W.2d 2, 5-6 (Tex. 1990); *Palmer v. Enserch Corp*., 728 S.W.2d 431, 433 (Tex. App.—Austin 1987, writ ref'd n.r.e.). The equitable tolling theory has been applied "when the wrong defendant is sued and the proper defendant is not named until after limitations has expired." *Walls*, 958 S.W.2d at 946.

This case, however, does not present a situation in which the wrong defendant has been sued, the defendant has been misidentified, or any other type of pleading error. Rather, the Ruizes' federal suit was dismissed before the statute of limitations ran, and they did not re-file their suit until seventy-nine days after the federal court dismissed their claims. A plaintiff must exercise diligence in the prosecution of her suit. *Palmer*, 728 S.W.2d at 434. The party must plead and prove that she exercised due care to prevent the running of the statute or she cannot overcome the properly asserted defense of limitations. *Id.* The Ruizes have not shown that they exercised diligence in preventing the running of the statute of limitations. We see no reason to apply an equitable tolling theory to allow for an indefinite period of time within which to re-file a suit in this case. Thus, we hold that appellees proved as a matter of law that the Ruizes' defamation claims were barred by limitations and no tolling provision applied to save their claims. We overrule the Ruizes' first and second issues.

### *Exhaustion of Administrative Remedies*

By their fourth issue, the Ruizes complain that the trial court erred in granting summary judgment in favor of appellees on the Ruizes' whistleblower claims because the court misapplied the exhaustion of administrative remedies requirement. The Ruizes contend that (1) the act does not require them to "exhaust" their administrative remedies, only initiate them, and (2) they initiated their administrative remedies when they attended a meeting with AISD personnel on February 20, 2001.

The whistleblower act provides that "[a] state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public

11

employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." Tex. Gov't Code Ann. § 554.002 (West Supp. 2004). Before an employee may file suit in district court under the act, the employee must first initiate the grievance or appeal procedures of the employing state or governmental entity. Tex. Gov't Code Ann. § 554.006(a) (West Supp. 2004). The employee must initiate the grievance procedures within ninety days after the alleged violation occurred or was discovered. *Id.* § 554.006(b). If the employer does not render a decision within sixty days from the date the employee initiated the grievance, the employee may file suit in district court. *Id.* § 554.006(d).

The whistleblower act has two purposes: (1) to protect public employees from retaliation by their employers for reporting violations of law in good faith and (2) to secure lawful conduct from those who direct and conduct the affairs of public bodies. *Gregg County v. Farrar*, 933 S.W.2d 769, 775 (Tex. App.—Austin 1996, writ denied). In addition, the act affords the governmental entity an opportunity to correct its errors by resolving disputes before facing litigation, as the cost of litigation is ultimately borne by the public. *Fort Bend Indep. Sch. Dist. v. Rivera*, 93 S.W.3d 315, 318 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Farrar*, 933 S.W.2d at 775. The act encourages compliance through informal processes rather than litigation. *Rivera*, 93 S.W.3d at 318; *Farrar*, 933 S.W.2d at 775 (quoting *Texas Air Control Bd. v. Travis County*, 502 S.W.2d 213, 215 (Tex. Civ. App.—Austin 1973, no writ)).

This Court has held that failure to comply with the exhaustion of administrative remedies requirement deprives a court of jurisdiction over a whistleblower claim. *Farrar*, 933

12

S.W.2d at 777. The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction or a motion for summary judgment. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

Regarding the Ruizes' first argument—that they were required only to initiate the grievance process, not exhaust all administrative remedies—we agree. In 1995, the legislature amended section 554.006(a) by replacing the word "exhaust" with the word "initiate." Act of May 22, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 610, *amended by* Act of June 15, 1995, 74th Leg., R.S., ch. 721, § 6, 1995 Tex. Gen. Laws 3812, 3813. The amendment was apparently intended to clarify the procedural requirements under the act so that it more accurately reflects the true process of events required under the statute. *City of San Antonio v. Marin*, 19 S.W.3d 438, 441 (Tex. App.—San Antonio 2000, no pet.). Even before the statute was amended, however, complete exhaustion of administrative remedies was not required. *Id.* Thus, we agree with the Ruizes; they were not required to completely exhaust their administrative remedies before filing suit.

Although the whistleblower act does not require complete exhaustion of remedies, an employee is nevertheless required to initiate the grievance procedure and allow the employer an opportunity to reach a final decision within sixty days before filing suit. Tex. Gov't Code Ann. § 554.006(d); *Rivera*, 93 S.W.3d at 319-20. This the Ruizes failed to do, as evidenced by the exhibits attached to appellees' motion for summary judgment. In the termination letter sent to the Ruizes by Houser, the executive director of human resources for AISD, Houser informed the Ruizes of their right to file a grievance appeal regarding AISD's decision to terminate employment. An

13

excerpt from a deposition of Chantell reveals that she did not avail herself of the grievance appeal process described in the letter:

Q. Ms. Ruiz, have you ever complained to the Austin school district board of trustees about your termination?

A. No, ma'am.

Q. Have you ever been to an Austin school district board meeting?

A. No, ma'am.

Q. Have you ever met with superintendent, Dr. Forgione, about your termination?

A. No, ma'am.

Q. Did you ever me[e]t with general counsel, Mel Waxler, about your termination?

A. No, ma'am.

. . . .

Q. Have you met with Principal Darrell Baker since you were terminated?

A. No.

Q. Have you met with any other A.I.S.D. official?

A. No.

. . . .

Q. Have you met with anyone at the Austin Independent School District after February 22nd, 2001 [the date of the Ruizes' termination]?

A. No.

14

Similarly, Patricia's deposition reveals that she acknowledged receiving correspondence from the office of the attorney general informing her of the requirement to initiate administrative remedies before filing a whistleblower suit; however, she did not initiate any grievance procedure with the school district:

> Q.  Did you initiate a grievance procedure with the Austin Independent School District?
>
> A.  I just filed a suit against them is all I did.

Finally, appellees included a letter that was sent by the Ruizes' counsel to AISD's counsel and to Houser, informing them that he did "not believe the administrative process is possible, in light of the whistleblower claims which both my clients have which requires a more timely filing than that permitted by pursuing the administrative process."

The Ruizes contend that they did in fact initiate a grievance appeal. They claim that they did so when they attended a meeting on February 20, 2001 with Houser, Laura Otey, director of employee relations, and AISD's attorney. The Ruizes claim that they raised their concerns regarding retaliation under the whistleblower act at that meeting. This meeting, however, did not satisfy the requirement that they invoke a grievance procedure before filing suit. The Ruizes were terminated by letter dated February 22. In that letter, the Ruizes were informed of their right to appeal AISD's decision to terminate them by "following the Administrative Appeal Procedures for Classified Employees Being Terminated contained on the reverse side of the attached Administrative Appeal for Termination Form." The Ruizes chose not to do so. We conclude that the Ruizes failed to initiate action under the district's formal appeal process as described in the February 22

15

termination letter. Because the Ruizes failed to initiate a grievance or appeal of their termination before filing suit, the trial court was without subject-matter jurisdiction to consider their whistleblower claim. We therefore overrule the Ruizes' fourth issue.

## CONCLUSION

We hold that the Ruizes' defamation claims were barred by the statute of limitations as a matter of law, and the trial court was without jurisdiction to consider their whistleblower claims because they failed to initiate a grievance or appeal of their termination.[4] Accordingly, the trial court properly granted summary judgment in favor of appellees, and we affirm that judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: May 27, 2004

---

[4] In light of our holding that all of the Ruizes' claims were barred either because the statute of limitations had run or because they failed to exhaust their administrative remedies, we do not reach the Ruizes' issues challenging appellees' assertion of governmental and statutory immunity as bases for the summary judgment. *See* Tex. R. App. P. 47.1 (opinion should be as brief as practicable).

16