NO. 07-03-0444-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

DECEMBER 14, 2004

_____

SHANA JORDAN,

Appellant

v.

JEFFERSON COUNTY,

Appellee

_____

FROM THE 136TH DISTRICT COURT OF JEFFERSON COUNTY;

NO. D-166,494; HON. MILTON SHUFFIELD, PRESIDING

_____

***Opinion***

_____

Before QUINN, REAVIS, and CAMPBELL, JJ.

Shana Jordan (Jordan) appeals from a summary judgment denying her recovery against Jefferson County (the County). Through five issues, she contends that material questions of fact exist regarding whether 1) she was terminated pursuant to a uniform application of a neutral absence control policy, 2) her whistleblower claim was time barred, 3) she suffered an adverse employment action for purposes of her whistleblower claim, 4) she was denied due process of law because she had a property interest in her continued

employment, and 5) she was denied her rights to free speech. We affirm the judgment of the trial court.

## *Background*

Jordan was employed by the County in the office of Brandon Crowder, the Precinct 4 Constable. She and Crowder maintained offices in a double wide trailer with Judge Ray Chesson, Justice of the Peace for Precinct 4, and his staff. The acts underlying her grievance involved Chesson. She complained to others about aspects of his conduct directed towards her beginning in July of 2000. They consisted of angry outbursts, the use of obscenities, and kicking a trash can. On July 23, 2001, the County informed her, by letter, that she was "administratively separated from employment."[1] The reason given was her exhaustion of "all applicable accrued leave and unpaid leave available." At the time, Jordan had taken voluntary leave from work due to an incident with Chesson.

Jordan filed suit against the County on January 15, 2002. Through the proceeding, she sought damages for the County's purported violation of the Texas Whistleblower Act and a declaration that it had violated various rights given her under article I of the Texas Constitution. Upon joining issue, the County moved for summary judgment upon all her claims. The motion was granted, and the trial court stated in its order that 1) all Jordan's claims failed because she "was terminated pursuant to the uniform application of a neutral absence control policy" and 2) her whistleblower claim not only was barred by limitations but also lacked merit because "she did not suffer an adverse employment action as a result

---

[1]According to County policy, an "administrative separation" consisted of an employee being "removed from the County's payroll after having exhausted all earned and/or authorized time off from work . . . ."

2

of making a good faith report of a violation of law to an appropriate law enforcement authority." Jordan then appealed.

### *Issue Two – Limitations*

We initially address the claim of limitations *viz* the whistleblower allegation. Jordan contends that she timely filed suit though it was filed more than 90 calendar days after her separation. This is purportedly so because the time during which her grievance remained pending should be deducted from the period of limitations. We overrule the issue.

According to statute, one wishing to pursue a whistleblower claim must file suit no later than 90 days after the date the alleged violation occurred or was discovered through reasonable diligence. TEX. GOV'T CODE ANN. §554.005 (Vernon 2004). However, statute further obligates the employee to comply with any grievance or appeal procedure of the governmental entity relating to the suspension or termination of employment prior to filing suit. *Id.* §554.006(a). Additionally, the employee must not only invoke the "applicable grievance or appeal procedures" within 90 days of the date on which the adverse action occurred or the employee discovered it, *id.* §554.006(b), but also the "[t]ime used by the employee in acting under the grievance or appeal procedures" must be excluded from the 90-day limitations period mentioned in §554.005 of the statute. *Id.* §554.006(c).

Here, no one disputes that limitations began to run no later than July 24, 2001, the day Jordan received the letter placing her on administrative separation. Nor is it disputed that suit was filed on January 15, 2002. Counting the number of days between those two dates inescapably leads to the conclusion that Jordan did not sue within 90 days of July 24th. Yet, the record contains evidence of a letter sent by Jordan's attorney to the local county judge on September 9, 2001. Therein, her counsel notified the judge "that she

3

grieves the substantive due process violations surrounding the denial to her [of] relief from harassment, and . . . of leave from harassment." So too did she request "a due process hearing" and "reinstatement to [a] position of comparable responsibility, salary, in a different precinct, and public apologies . . . ." The request for a hearing was denied on December 28, 2001.

In denying the request, the County not only rejected the grievance but also ended the grievance process, according to Jordan. Thus, she continues, the period between September 9th and December 28th must be excluded from the 90-day limitations period. And, if it is, then her suit was timely, she concludes.

The flaw in Jordan's argument involves the presence of a grievance procedure. Implicit in the duty to comply with "applicable" grievance policies concerning the suspension or termination of employment is the need for the existence of an applicable policy. Indeed, one can hardly be required to exhaust administrative remedies without the existence of an administrative remedy. Similar logic also requires one to conclude that the limitations period can hardly be extended through compliance with an established grievance procedure if no such procedure exists. Admittedly, the County had a grievance policy. Yet, expressly excluded from its scope were "Administrative Separations." Given this, the policy could not serve as a means of extending the limitations period since it was inapplicable to Jordan's circumstance.

Nonetheless, Jordan contends that because an elected official may choose to participate or not participate in the policy and nothing illustrated that Crowder (the elected official for whom she worked) chose to participate in it, her September 9th letter tolled limitations. Assuming *arguendo* that this argument was made below and also assuming

4

that her supervisor had not opted to comply with the policy, there still remains a dearth of evidence indicating that some other grievance procedure applied to her circumstance. Indeed, she informs us of none. Without an applicable procedure with which she had to comply, there was nothing to stop the 90-day period from running. So, we must conclude that there existed no material issue of fact regarding the expiration of the 90-day limitations period. In other words, the County established, as a matter of law, that limitations barred Jordan from pursuing her whistleblower claim.

### Issues One and Three – Uniform Application of Absence Policy and Adverse Employment Action

Issues one and three involve other grounds alleged by the County (in its motion for summary judgment) to defeat Jordan's whistleblower allegation. It contended that her removal from the County's payroll occurred pursuant to the uniform application of its absence policy and that she suffered no adverse employment action. Because we hold the trial court did not err in rejecting the whistleblower claim on the basis of limitations, we need not determine whether other grounds (such as those addressed in issues one and three) also supported its decision *viz* that particular cause of action. Thus, issues one and three are also overruled.

### Issue Four – Denial of Due Process

Jordan asserts, in her fourth issue, that she had a constitutionally protected property interest in continued employment with the County. Though her employment was "at will" per the County's policies, this status was allegedly modified by the policy regarding an employee's removal from the payroll once he exhausts all his leave. So too does she posit that her constitutionally protected liberty interests in being free from 1) retaliation for having

5

reported Chesson to the Texas Judicial Conduct Commission and 2) the threatening behavior and verbal abuse of Chesson were denied her "without substantive and procedural due process." We overrule the issue.

*Property Interest in Continued Employment*

To have a property interest in public employment, one must prove that he had a legitimate claim of entitlement to, as opposed to, a unilateral expectation in the job. *Texas A & M University System v. Luxemburg,* 93 S.W.3d 410, 422 (Tex. App.–Houston [14th Dist.] 2002, pet. denied); *McCartney v. May,* 50 S.W.3d 599, 607 (Tex. App.–Amarillo 2001, no pet.). Yet, in Texas, continued employment generally depends upon the will of the employer. That is, unless a specific agreement to the contrary dictates otherwise, an employee can be released for good reason, bad reason, or no reason. *Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex. 1998); *Federal Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283 (Tex. 1993). So, it follows that to the extent the "at will" relationship can be altered by an employment manual, the manual must contain language that specifically and expressly limits the employer's right to terminate the employee. *Trostle v. Combs,* 104 S.W.3d 206, 211 (Tex. App.–Austin 2003, no pet.). Moreover, if there appears in the manual a disclaimer evincing that the "at will" employment relationship remains unaffected by anything else in the manual, the disclaimer negates any implication that the employment relationship is something other than at the will of the employer. *Federal Express Corp. v. Dutschmann,* 846 S.W.2d at 283 (holding that the employee had no legitimate expectation in continued employment because the employment manual contained a provision stating that nothing in the document created any contractual rights "regarding termination or otherwise") .

6

Here, the County's policies included one declaring that "[n]othing herein shall be construed as creating a contractual right to employment or altering the common-law right of the County to terminate the employment of any County employee." Following it appears the statement that "[e]mployment shall be at will, so that the employment relationship may be terminated at the will of such person or at the will of the County at any time." Furthermore, the County's employee handbook also said:

> Your employment with Jefferson County is "at-will" and entered into voluntarily. You are free to resign at any time, for any reason, with or without notice. Similarly, the County is free to terminate the employment relationship at any time.

This verbiage is nothing short of the disclaimer contemplated in *Federal Express*. It clearly reveals an intent to maintain the "at will" employment relationship between the County and its employees, irrespective of any other County employment policy. Thus, the suggestion by Jordan that the administrative separation policy altered the "at will" employment relationship and somehow vested her with an interest in continued employment was negated, as a matter of law.

Nor do we find meritorious Jordan's contention that a right to continued employment arose when she was granted permission (by the constable) to take a leave of absence, despite having previously exhausted all her accrued leave. This is so because the County's policies also dictated that "[n]o person acting for or purporting to act for the County has authority to vary the employment at will relationship . . . , nor . . . make an oral or written agreement for permanent employment or employment for any specified period of time, except by specific Order entered in the minutes of the Commissioners' Court." We are cited to no evidence of record suggesting that the leave granted by the constable was

7

incorporated into such an order. Thus, we cannot hold that his words created a material issue of fact regarding the modification of Jordan's status as an "at will" employee.

*Liberty Interests*

With respect to her purported liberty to be free from retaliation for having reported Chesson to the Texas Judicial Conduct Commission and from threatening behavior and verbal abuse from Chesson, Jordan failed to expressly mention them below as grounds to defeat summary judgment. Because she so failed, they cannot now be used to secure a reversal of the judgment. *McConnell v. Southside I.S.D.,* 858 S.W.2d 337, 341 (Tex. 1993).

### *Issue Five – Free Speech Rights*

In her final issue, Jordan claims her free speech rights were violated due to her termination for reporting Chesson to the Judicial Conduct Commission and the Human Resources Department. We overrule the issue.

Initially, we note that Jordan cited no legal authority in support of her issue, contrary to Texas Rule of Appellate Procedure 38.1(h). While it may be that our Supreme Court requires courts of appeal to construe the rules of appellate procedure "reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule," *Republic Underwriters Ins. Co. v. Mex-Tex , Inc.*, No. 03-0662, 2004 LEXIS 1247 at 12 (Tex. November 19, 2004), we know of no authority obligating us to become advocates for a particular litigant through performing their research and developing their argument for them. Indeed, the law and canons of ethics require that we remain neutral. Such impartiality cannot be maintained if appellate courts must *sua sponte* wave the banner dropped by the litigant, especially when the litigant has his own legal counsel. Given this and Jordan's non-compliance with Rule 38.1(h), the issue was

8

waived due to inadequate briefing. *Baker v. Gregg County,* 33 S.W.3d 72, 79 (Tex. App.–Texarkana 2000, no pet.).

Yet, assuming *arguendo* that the argument contained appropriate citation to authority and was, therefore, adequately briefed, we would remain obligated to overrule it. This is so because the speech purportedly uttered by Jordan must involve matters of legitimate public, as opposed to private, concern. *In re Davis,* 82 S.W.3d 140, 149 (Tex. Spec. Ct. Rev. 2002); *Haynes v. City of Beaumont,* 35 S.W.3d 166, 178 (Tex. App.–Texarkana 2000, no pet.). However, it has been held that disputes in the workplace, such as complaints of harassment for informing officials about another's conduct, *Haynes v. City of Beaumont*, 35 S.W.3d at 178-79, or physical confrontations between individuals at the workplace, *Brown v. University of Texas Health Center,* 957 S.W.2d 911, 918 (Tex. App.–Tyler 1997, no pet.), generally implicate private interests.

Here, Jordan's complaints to the Judicial Conduct Commission and Human Resources Department liken to those involved in *Haynes* and *Brown*. They arise from her treatment by Chesson in the workplace and her attempt to have him sanctioned for it. Given this, we cannot say that the trial court erred when it rejected her claim that the County retaliated against her for exercising rights of free speech.

Having overruled each issue, we affirm the judgment.

Brian Quinn
Justice

9