NO. 07-08-0072-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

SEPTEMBER 25, 2009
_____

TERESA BATES, AS THE PERSONAL REPRESENTATIVE OF
THE ESTATE OF KEVIN BATES, AND JOE REYNERO, APPELLANTS

V.

RANDALL COUNTY, APPELLEE
_____

FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;

NO. 56,384-B; HONORABLE RON ENNS, JUDGE PRESIDING
_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellants, Joe Reynero and Teresa Bates,[1] appeal the trial court's awards of

attorney's fees in a whistleblower lawsuit in which appellants prevailed.  Appellee, Randall

County, also filed notice of appeal of the judgment.  We reverse and remand in part and

affirm in part.

_____

[1] Teresa Bates appears as the personal representative of the estate of her late-
husband, Kevin Bates.

Background

On or about December 13, 2004, Kevin Bates allegedly reported to Stan Cranmer, assistant superintendent of the Randall County Road and Bridge Department, that employees of the Department were violating the law by operating road equipment without the proper commercial driver's licenses.[2] Cranmer, however, denies that Bates ever made such a report. On December 23, 2004, Reynero called the Randall County Sheriff to report that employees of the Department were operating equipment without the proper licenses. The Sheriff contacted Russell Hanson, superintendent of the Department, and inquired about the matter. Hanson asked Cranmer if the report was true and Cranmer informed him that no one had driven without proper licensing.[3]

Following his discussion with the Sheriff, Hanson decided to terminate appellants. He called both appellants into a meeting on December 29, 2004, at which Hanson immediately placed letters of termination in front of appellants and informed them that they had been terminated. According to the termination letters, appellants were being terminated because,

> Employee violated the Randall County personnel policy by ignoring proper grievance procedure by by-passing road department supervisors and

---

[2] Evidence was presented that appellants made reports to the Texas Natural Resource Conversation Commission that the Department was illegally dumping materials. However, the jury found that these reports were not made in good faith or were not a cause of appellants' termination. Appellants did not challenge these jury findings by their appeal.

[3] However, Cranmer admitted during trial that there had been one instance in which an employee had driven a vehicle that he was not properly licensed to operate approximately six weeks prior to Hanson's conversation with the Sheriff.

department head[4] and going directly to another department head. This caused a major disruption of departmental work flow. It is felt this attitude would be too disruptive in the future for effective departmental function.

After Hanson read the letters to appellants, Reynero attempted to discuss the matter with Hanson, but Hanson cut him off by saying that the matter was not "up for discussion" and that Bates and Reynero should leave the premises. Reynero testified at the subsequent trial that he considered his attempts to discuss the matter with Hanson to be a verbal initiation of the County's grievance procedure.

On or about March 8, 2005, the County's attorney made a verbal offer to reinstate both Bates and Reynero with full back-pay and benefits. Appellants' attorney rejected the offer. On March 15, appellants sent letters to Brady Phillips[5] requesting reinstatement, double back pay, and other compensatory damages to be discussed in the future. On March 24, the County sent settlement offers to appellants that would either reinstate appellants with back-pay or would pay them back-pay through March, plus the amount of money each appellant withdrew from their retirements, and $5,000. The cash settlement offers contained in these letters would total $23,500.76 for Bates and $16,903.22 for Reynero. On this same date, Phillips responded to appellants' March 15 letters by letters stating, "I have reviewed your grievance and will deny it because it was not filed timely and you failed to follow proper procedure . . . ." The following day, appellants sent letters to

---

[4] According to the county's grievance policy, appellants should have first taken their complaint to Cranmer, then to Hanson, then to the County Commissioners, and then, finally, to a grievance committee.

[5] Phillips had assumed Cranmer's position and would have been appellants' direct supervisor on March 15 if appellants had still been employed by the Department.

3

Cranmer expressing a desire to continue to pursue their grievances. The record does not include any response to appellants' March 25 letters.

On April 7, 2005, appellants filed suit against Randall County alleging violations of the Texas Whistleblower Act. See TEX. GOV'T CODE ANN. §§ 554.001-.010 (Vernon 2004).[6] Appellants sought actual damages in the form of lost wages and mental anguish damages, punitive damages, and attorney's fees. The County answered. On November 21, 2006, the County filed a Plea to the Jurisdiction alleging that appellants' claims were jurisdictionally barred under the Texas Whistleblower Act because the claims were untimely filed. The trial court denied the County's Plea on April 16, 2007. In its First Amended Answer, the County specifically pled that appellants' claims were barred by limitations under the Texas Whistleblower Act. The case was tried to a jury and, on September 17, 2007, the jury returned a verdict awarding Bates $7,713 in back wages and $10,736 for lost employee benefits and awarding Reynero $7,203 in back wages and $4,523 for lost employee benefits. The County filed a motion for judgment notwithstanding the verdict (motion for JNOV) alleging that the evidence presented at trial conclusively established that appellants' claims were untimely filed and were, therefore, jurisdictionally barred or the County was entitled to judgment on its affirmative defense of limitations. The trial court denied the County's motion.

---

[6] Further reference to provisions of the Texas Government Code will be by reference to "section ___" or "§ ___."

4

The issue of attorney's fees was not submitted to the jury. In affidavits submitted to the trial court, Bates's counsel requested $89,465 and Reynero's counsel requested $69,317.50 as reasonable attorney's fees. The County responded to appellants' requests for attorney's fees asserting that, under Texas Local Government Code section 89.004(b), appellants should be ordered to pay the County's costs of suit, including attorney's fees, and that appellant's requested attorney's fees were unreasonable under the circumstances. On December 2, 2007, the trial court entered Final Judgment in accordance with the jury's verdict. The Final Judgment also awarded appellants attorney's fees in amounts of $15,000 to Bates and $10,000 to Reynero. Appellants moved for new trial solely on the issue of the award of attorney's fees, which appears to have been overruled by operation of law.

Appellants timely filed a Joint Notice of Appeal of the award of attorney's fees in this matter. The County also timely filed Notice of Appeal. In the order that the issues presented will be addressed, the County contends that (1) the trial court erred in denying the County's motion for JNOV on the basis that appellants' claims were jurisdictionally barred or that the evidence conclusively established the affirmative defense of limitations and (2) the trial court erred in awarding attorney's fees to appellants and in not awarding attorney's fees to the County under Texas Local Government Code section 89.004(b). By one issue, appellants contend that the trial court erred in awarding appellants only a fraction of their reasonable and necessary attorney's fees.

5

Jurisdiction and Limitations

The County contends that appellants' claims are jurisdictionally barred or that the evidence conclusively established the County's affirmative defense of limitations. The County sought dismissal of appellants' claims on the jurisdictional grounds by way of a plea to the jurisdiction. After the jury reached its verdict, the County, by its motion for JNOV, again challenged the trial court's jurisdiction and contended that the evidence conclusively established the affirmative defense of limitations.

The County's jurisdictional challenge contends that appellants' suits were not timely filed under the Texas Whistleblower Act and, because timely filing of suit is a statutory prerequisite to suit, the trial court was without jurisdiction to hear appellants' claims. See § 554.005 (suits under the Whistleblower Act must be filed within 90 days); § 311.034 (statutory prerequisites to suit are jurisdictional requirements in all suits against a governmental entity). Subject matter jurisdiction is essential to the authority of a court to decide a case. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). Subject matter jurisdiction is never presumed and cannot be waived. Id. at 443-44. Whether the trial court had subject matter jurisdiction to decide a case is a legal question subject to *de novo* review. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). Likewise, issues of statutory construction are reviewed *de novo*. Tex. Dep't of Transp. v. Needham, 82 S.W.3d 314, 318 (Tex. 2002).

The County's limitations contention was presented as an affirmative defense[7] and by way of a motion for JNOV. A JNOV motion should be granted when the evidence is conclusive and one party is entitled to judgment as a matter of law. See Gallas v. Car Biz, Inc., 914 S.W.2d 592, 593 (Tex.App.–Dallas 1995, writ denied). When the party seeking to disregard the jury's finding had the burden of proof on the issue, we, first, must examine the record for evidence that supports the jury's finding and ignore contrary evidence. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989). If there is no evidence to support the jury's finding, we then must review the entire record to determine if the contrary position was established as a matter of law. Id.

Both of the County's contentions are premised on the theory that appellants failed to timely file their lawsuit in accordance with the requisites of the Texas Whistleblower Act. The Texas Whistleblower Act protects a public employee who makes a good faith report of a violation of law by the employing governmental entity from adverse personnel action, such as termination or suspension. See § 554.002(a). The Act authorizes the reporting employee to file suit against the governmental entity and to sue for injunctive relief, actual damages, court costs, and reasonable attorney's fees. See §§ 554.003, .0035. However, unless an applicable grievance procedure applies to the reporting employee, the employee must file suit within 90 days of when the alleged adverse personnel action occurred or was discovered by the employee through reasonable diligence. § 554.005. If a grievance

---

[7] The County did not request a jury question regarding its affirmative defense of limitations. As a result, our analysis of the limitations defense will be limited to its presentation as a ground for judgment notwithstanding the verdict.

procedure applies to the adverse personnel action, the employee must initiate that grievance procedure before filing suit. See § 554.006(a). Once an applicable grievance procedure is initiated, the governmental entity is given 60 days in which to reach a final decision on the grievance and this time is excluded from the 90 day deadline to file suit. See § 554.006(b), (c).

In the present case, appellants were terminated by the Department on December 29, 2004. They filed suit against the County on April 7, 2005, 99 days after the adverse personnel action. Appellants contend that they attempted to initiate the County's grievance procedure during the meeting at which they were informed of their termination. However, they were prevented from so doing by Hanson refusing to discuss the matter. If the attempts of an employee to comply with the grievance procedure are effectively thwarted by the governmental entity's refusal to meet or to discuss the matter, the purposes of the Whistleblower Act would be frustrated, especially if the governmental entity were allowed to defend a subsequent suit by claiming that the employee's claim is barred because the employee did not first initiate the grievance procedure. See Fort Bend Indep. Sch. Dist. v. Rivera, 93 S.W.3d 315, 320 (Tex.App.–Houston [14th Dist.] 2002, no pet.). Because Bates's and Reynero's attempts to initiate the grievance procedure in their meeting with Hanson were thwarted, we conclude that a fact issue was presented regarding whether appellants initiated the County's grievance procedure in a manner sufficient to toll the limitations period of section 554.005.

However, the County contends that there was no grievance procedure applicable to appellants' complaints and, therefore, even if they attempted to initiate the grievance procedure in their December 29 meeting with Hanson, their suits were barred because they were untimely filed. The County's grievance procedure expressly applies to "employees." The County contends that appellants were no longer employees following their termination on December 29, 2004 and, therefore, the County's grievance procedure was inapplicable to their complaints. In support of its contention, the County cites this Court's opinion in Jordan v. Jefferson County, 153 S.W.3d 670 (Tex.App.–Amarillo 2004, pet. denied), for the proposition that "Implicit in the duty to comply with 'applicable' grievance policies concerning the suspension or termination of employment is the need for the existence of an applicable policy." Id. at 673.

However, when it is unclear whether an employer has a post-termination grievance procedure, the terminated employee's notice to the employer that he believes that an adverse personnel action was taken against him due to a good faith report of a violation of law by the governmental entity, if made within 90 days, is sufficient to toll the limitations period of section 554.005. See Curbo v. State, 998 S.W.2d 337, 341 (Tex.App.–Austin 1999, no pet.); Beiser v. Tomball Hosp. Auth., 902 S.W.2d 721, 724 (Tex.App.–Houston [1st Dist.] 1995, writ denied).

Additional actions taken by Bates and Reynero were treated as attempts to initiate the grievance procedure by the County. For example, in reply to Letters of Grievance sent by appellants on March 15, Brady Phillips stated that he had "reviewed your grievance and

9

will deny it because it was not timely filed . . . ."  While the timeliness of appellants' filing of their grievances was a fact question for the trial court, we construe Phillips's statement as, at a minimum, creating uncertainty as to whether the County's grievance procedure applied to appellants' claims.

The County alternatively contends that, if the County's grievance procedure applied to appellants' claims, appellants failed to initiate each step of the grievance procedure. However, it is well settled that the Texas Whistleblower Act no longer requires exhaustion of the governmental entity's grievance procedure; rather, it requires that the procedure merely be initiated and then that the governmental entity be afforded 60 days to resolve the grievance before suit is filed.  See § 554.006(a); Univ. of Tex. Med. Branch at Galveston v. Barrett, 159 S.W.3d 631, 632 (Tex. 2005); Fort Bend Indep. Sch. Dist., 93 S.W.3d at 319; Castleberry Indep. Sch. Dist. v. Doe, 35 S.W.3d 777, 780 (Tex.App.–Fort Worth 2001, pet. dism'd w.o.j.).  Therefore, appellants' initiation of the grievance procedure was sufficient to comply with the requisites of the Texas Whistleblower Act.

Finally, the County contends that, even if the County's grievance procedure applied to appellants' claims and if appellants timely initiated that procedure, appellants still failed to file suit within 90 days of the County's final resolution of those grievances.  The initiation of an applicable grievance procedure tolls the 90 day limitations period under the Texas Whistleblower Act for the period that the grievance is being acted upon by the governmental entity or for 60 days.  See § 554.006(c); Curbo, 998 S.W.2d at 341; Beiser, 902 S.W.2d at 724.  The County's contention is premised on resolution of the fact issue

10

regarding whether Hanson's refusal to discuss appellants' terminations at the December 29 meeting constituted a "final decision" of the County regarding appellants' grievances. Clearly, the trial court's rulings on the County's plea to the jurisdiction and motion for JNOV gives rise to an implied finding that the County did not reach a final decision on appellants' grievances at any time before the ninth day[8] after the grievance procedure was initiated. See Lassiter v. Bliss, 559 S.W.2d 353, 358 (Tex. 1977), overruled on other grounds by, Cherne Indus., Inc. v. Magallanes, 763 S.W.2d 768, 770 (Tex. 1989) (in the absence of findings of fact relating to a decision made by the trial court, all factual findings that would support the ruling are presumed). Further, the County's actions, specifically its multiple attempts to reach an agreement with appellants regarding their claims, are inconsistent with the County having reached a final decision to deny appellants' grievances.

Because we conclude that the County has failed to meet its burden to show that the County's grievance procedure did not apply to appellants' claims as a matter of law and because we will not disturb the trial court's resolution of the factual questions related to whether Bates and Reynero timely initiated the County's grievance procedure and when the County finally decided those grievances, we overrule the County's first issue.

---

[8] As appellants filed their claims on the 99th day after the County took the adverse personnel action complained of, a tolling of the limitations period for nine days or more would make appellants' suit timely filed.

11

Randall County's Entitlement to Attorney's Fees

By its second issue, the County contends that the trial court erred in awarding attorney's fees to appellants rather than awarding attorney's fees to the County. This issue, as presented by the County, appears to be an issue of first impression. The County contends that, because appellants did not recover more as a result of their suit than the County offered them in settlement of their claims, the trial court was required to assess the County's costs of suit against appellants. See TEX. LOC. GOV'T CODE ANN. § 89.004(b) (Vernon 2008). Appellants respond by contending that (1) the County has failed to show that "costs of suit" include attorney's fees, (2) the prevailing party's entitlement to attorney's fees under the Whistleblower Act controls over the general presentment provision, and (3) appellants, in fact, recovered more under the judgment than the County offered them in settlement of their claims.

We reject appellants' third contention. The only way that the judgment could be read to have awarded appellants a greater recovery than the $23,500.76 the County offered to Bates and the $16,903.22 the County offered to Reynero is if the award of attorney's fees or pre- and post-judgment interest are considered part of the recovery. We conclude that a construction of section 89.004(b) of the Texas Local Government Code that would include attorney's fees and interest as part of the recovery to be compared to the settlement offer made by the County would defeat the purpose of the statute. See Id. Clearly, the purpose of section 89.004(b) is to encourage the County to make legitimate efforts to settle claims without incurring significant litigation expenses, while also providing

12

a disincentive to claimants rejecting legitimate settlement offers. See Id.; Essenberg v. Dallas County, 988 S.W.2d 188, 189 (Tex. 1998). If, as appellants contend, attorney's fees and interest are considered to be part of a claimant's recovery, the claimant would benefit from rejecting a legitimate settlement offer. We will not construe the statute in a manner that would produce such an absurd result. See Fleming Foods of Tex., Inc. v. Rylander, 6 S.W.3d 278, 284 (Tex. 1999).

The Texas Whistleblower Act provides that the prevailing plaintiff under the Act "is entitled to sue for . . . reasonable attorney fees." § 554.003(a)(4). Section 89.004 of the Texas Local Government Code provides that, before a person may file suit against a county or an elected county official, the person must present the claim to the commissioners court. TEX. LOC. GOV'T CODE ANN. § 89.004(a). If the commissioners court offers to settle the plaintiff's claim for more than the plaintiff ultimately recovers after trial, the plaintiff shall pay the costs of the suit. Id. § 89.004(b). In the present case, it is beyond legitimate dispute that the County offered to settle appellants' claims for an amount greater than appellants ultimately recovered after trial. As such, the two statutory provisions discussed in this paragraph would appear to be in conflict when applied to this appeal.

However, because the compliance with applicable grievance procedures provision of the Texas Whistleblower Act provides notice to the county of the claims asserted by plaintiffs, our sister courts have held that the presentment requirement found in Texas Local Government Code section 89.004(a) does not apply to actions brought under the Texas Whistleblower Act. See Upton County v. Brown, 960 S.W.2d 808, 819 (Tex.App.–El

13

Paso 1997, no pet.); Gregg County v. Farrar, 933 S.W.2d 769, 772 (Tex.App.–Austin 1996, writ denied). Thus, as a necessary precondition to an award of costs of court in favor of the County does not apply to the claims brought by appellants, we conclude that the specific remedy provided by subsection (b) of Texas Local Government Code section 89.004 does not apply to appellants' whistleblower claims. In fact, had the legislature intended to include a cost shifting provision within the Texas Whistleblower Act, the existence of such a cost shifting provision in section 89.004 of the Texas Local Government Code highlights the ease with which the legislature could have done so. But, since the only provision in the Texas Whistleblower Act that addresses attorney's fees provides that the prevailing plaintiff is entitled to sue for reasonable attorney's fees, we conclude that the Legislature did not intend to shift costs of court to a prevailing plaintiff, even if the plaintiff's recovery following trial was less than the County offered in settlement of the plaintiff's claims.

The purposes of the Texas Whistleblower Act are to (1) protect public employees from retaliation by their employer when, in good faith, they report a violation of law, and (2) secure lawful conduct by those who direct and conduct the affairs of government. City of New Braunfels v. Allen, 132 S.W.3d 157, 161 (Tex.App.–Austin 2004, no pet.). Because the Act is remedial in nature, it should be liberally construed to effect its purpose. Id. Because one purpose of the Texas Whistleblower Act is to secure lawful conduct by governmental entities, it is in furtherance of the Act's purposes to hold that the cost shifting provision of section 89.004(b) of the Texas Local Government Code does not apply to successful claims asserted under the Texas Whistleblower Act.

14

Because the presentment requirement of section 89.004 of the Texas Local Government Code does not apply to claims asserted under the Texas Whistleblower Act and because application of section 89.004's cost shifting provision would undermine one of the purposes of the Texas Whistleblower Act, we overrule the County's second issue.[9]

## Award of Attorney's Fees to Appellants

Finally, appellants contend that the trial court abused its discretion in awarding appellants only a fraction of their reasonable and necessary attorney's fees. Appellants contend that they established that, through trial, Bates's reasonable and necessary attorney's fees were $89,465 and Reynero's reasonable and necessary attorney's fees were $69,592.50. However, the trial court awarded Bates $15,000 and Reynero $10,000 in attorney's fees. The County contends that the awards of attorney's fees were reasonable in light of the recovery awarded to appellants.

We review a trial court's award of attorney's fees for an abuse of discretion. City of Houston v. Levingston, 221 S.W.3d 204, 236 (Tex.App.–Houston [1st Dist.] 2006, no pet.). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner or when it acts without reference to any guiding rules or principles. Id.

In the present case, appellants' attorneys each submitted itemized billings and supporting affidavits to the trial court. This evidence indicated that the law firm

---

[9] As our resolution of the County's second issue vitiates the need to define the scope of the phrase "costs of suit," we express no opinion on the matter.

representing Bates had spent 561.7 hours representing her in this matter. Bates's attorney sought reimbursement for his time at a rate of $200 per hour and $75 per hour for time spent on the case by the attorney's legal assistant. The evidence indicated that the law firm representing Reynero had spent 520.75 hours on the case. Reynero's attorney sought reimbursement for time spent on the case at rates of $250 per hour for Sam Legate, $200 per hour for Michael Wyatt, $150 per hour for Daniela Labinoti, and $50 per hour for their legal assistants. Thus, the lodestar[10] amount of attorney's fees for Bates was $89,465 and for Reynero was $69,592.50.[11]

As prevailing plaintiffs in a whistleblower suit, appellants were entitled to the recovery of their reasonable attorney's fees. See § 554.003(a)(4); Levingston, 221 S.W.3d at 237. To calculate reasonable attorney's fees, an attorney should multiply the reasonable number of hours worked by a reasonable hourly rate. See Levingston, 221 S.W.3d at 237. After calculating the lodestar amount, a trial court can adjust the fee calculation based on factors such as those identified in Texas Disciplinary Rule of Professional Conduct 1.04, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. (STATE BAR RULES, art. X, § 9). One of these factors is the amount involved and the results

---

[10] The lodestar amount is defined as "a reasonable amount of attorney's fees in a given case, usually calculated by multiplying a reasonable number of hours worked by the prevailing hourly rate in the community for similar work . . . ." Id. at 236 n.18 (quoting BLACK'S LAW DICTIONARY 952 (7th ed. 1999)).

[11] The County challenged the hourly rate charged by appellants' attorneys and all of the fees charged for work performed by legal assistants of Reynero's counsel. However, even if the trial court were to accept all of the arguments asserted by the County relating to the rates charged by appellants' counsel, the lodestar amounts would remain far in excess of the fees awarded by the trial court.

obtained. Tᴇx. R. Pʀᴏꜰ. Cᴏɴᴅᴜᴄᴛ 1.04(b)(4). While the amount of damages recovered should be considered in calculating an award of attorney's fees, the court should also consider the decision's effect on the law and the purposes for which an award of attorney's fees is allowed. See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5ᵗʰ Cir. 1974).

In the present case, the County contends that appellants' damages were essentially liquidated before this case even began. The County argues that the most that appellants could have reasonably expected to recover from their suit was lost wages and lost employee benefits. These amounts could be calculated with reasonable certainty. As a result, the County contends that the amount of attorney's fees requested by appellants is not reasonably related to the results obtained and that the trial court did not abuse its discretion in decreasing its award of attorney's fees to an amount reasonably related to the results obtained.[12]

While we understand the County's contention and may generally agree with it, we nonetheless conclude that the trial court abused its discretion in awarding appellants such a small fraction of their reasonable attorney's fees. First, there is no evidentiary basis for the trial court's attorney's fee awards of $15,000 to Bates and $10,000 to Reynero. It appears that the trial court simply chose these numbers arbitrarily as there is no logical

---

[12] We note that the trial court did not identify the factors that it considered in awarding appellants attorney's fees. However, we agree with the County that the most logical inference is that the trial court considered the reasonable relationship between the amount recovered and the attorney's fees award.

17

basis for these awards reflected in the record.  Further, there is evidence in the record that the County's attorneys and staff worked on this case for 1,066.45 hours resulting in attorney's fees of $172,215.25.  Clearly, applying the County's contention above, there is no reasonable basis for the attorneys representing the County to have incurred a $172,215.25 bill on a case that could have been reasonably liquidated to entitle appellants to approximately $30,000 in damages.  Further, the record reflects that appellants incurred certain expenses as a result of a continuance requested by the County on the morning that trial was scheduled to begin.  Even if appellants should have considered the likely recovery from their claims in determining the extent of trial work that should have been done in this case, such unexpected happenings as the granting of a continuance on the morning of trial would certainly throw those estimates off and would justify, if not necessitate, additional work and expenses than was initially planned.

Finally, and as discussed more fully above, one of the purposes of the Texas Whistleblower Act is to secure lawful conduct by those who direct and conduct the affairs of government.  Allen, 132 S.W.3d at 161.  To that end, the purposes of the Act are advanced if the wrongdoing governmental entity must pay a successful whistleblower plaintiff's reasonable attorney's fees.  As such, while the results obtained by appellants were a proper consideration for the trial court, the trial court should also balance that factor with the effect that its awards of attorney's fees would have on the law.  Clearly, an award of attorney's fees to a successful whistleblower plaintiff that is less than 17 percent of the lodestar amount of fees incurred by the plaintiff could have a chilling effect on future

18

whistleblowers' willingness to bring suit, which, in turn, would frustrate the purposes of the Act.

While we conclude that the trial court abused its discretion in its award of attorney's fees in this case, we neither express nor imply any opinion as to what we would consider to be an appropriate award of attorney's fees in this case.

For the foregoing reasons, we sustain appellants' sole issue.

Conclusion

Having overruled the County's two issues and sustained appellants' sole issue, we reverse the trial court's award of attorney's fees and remand only that issue to the trial court for further proceedings.  See Lubbock County v. Strube, 953 S.W.2d 847, 858 (Tex.App.–Austin 1997, pet. denied).  In all other respects, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Pirtle, J., concurring and dissenting.

19