*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★  ★ ★ ★

# MEMORANDUM OPINION

No. 04-09-00325-CV

## IN THE INTEREST OF R.H.H. AND C.E.H.

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 1997-CI-07786
Honorable Karen H. Pozza, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Karen Angelini, Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice

Delivered and Filed: July 21, 2010

AFFIRMED

Jon Hendricks appeals a post-divorce order modifying the parent-child relationship. Jon contends the trial court erred by: (1) exercising jurisdiction over the case; (2) denying his jury demand; (3) not interviewing his children; (4) modifying the terms of his possession of and access to his children; (5) increasing child support and requiring him to pay health insurance premiums; and (6) ordering him to pay attorney's fees. We affirm.

## PROCEDURAL BACKGROUND

Monica and Jon Hendricks were divorced in 1998, and were appointed joint managing conservators of their two sons, R.H.H. and C.E.H. The trial court issued a standard possession order

that provided Monica the right to designate the children's residence and make educational decisions. In 2004, Monica and Jon agreed to modify the standard possession order so Jon would have possession of the boys on alternating weekdays every other week. Child support was also increased from $800.00 to $1,200.00 per month.

In 2006, Jon unilaterally withdrew R.H.H. from St. George Episcopal School, and attempted to enroll him in a public school. Monica filed a petition to modify the parent-child relationship and obtained a temporary restraining order preventing Jon from withdrawing either of the children from St. George and enrolling them in any other school. Jon then filed a counter-petition requesting he be appointed sole managing conservator, with the right to designate the children's residence and the exclusive right to make educational decisions. Monica responded by amending her pleadings to request she be appointed sole managing conservator and a modification of child support. Temporary orders were entered requiring the children stay at St. George until final orders were signed.

During pre-trial proceedings, Monica filed numerous motions to compel discovery, three motions to enforce child support payment, a motion to compel psychological exam, two motions to enforce temporary orders to compel Jon's participation in and payment of court ordered co-parenting classes and psychological evaluation, a motion to allow the children to attend their extra-curricular activities, and motions to compel mediation. Monica filed many additional motions, including a no evidence motion for summary judgment. Monica was granted summary judgment on Jon's request he be appointed sole managing conservator, and the court found there was no evidence of a material and substantial change to support a modification of conservatorship. After numerous other trial motions and multiple trial settings, the case finally came to trial. Before beginning trial, Monica and

Jon agreed to continue as joint managing conservators, and the case was tried to the judge on the remaining issues.

After hearing the testimony of Monica, Jon, two psychologists, and the attorneys, the trial court determined a standard possession order was not in the best interest of the children. The final order grants Monica the exclusive right to make educational decisions for the children, including all decisions regarding the children's extracurricular activities. Jon's possession was modified to every first, third, and fifth weekends of the month and his summer possession was reduced to fourteen days each summer, split into two seven-day periods. Jon was ordered to pay $1800.00 in child support each month, provide health insurance, and pay fifty percent of any medical expenses not covered by insurance. The trial court also permanently enjoined Jon and Monica from disclosing any negative information regarding the children, the subject matter of the lawsuit, or each other to school personnel or to other persons associated with the school the children attend. Finally, the court found good cause to award attorney's fees against Jon in the amount of $94,396.42.

Jon appeals the final order in the suit to modify the parent-child relationship.

## DISCUSSION

*A. Denial of Jury Demand*

Jon contends the trial court erred in denying his jury request. We review the trial court's denial of a jury demand for an abuse of discretion. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996). A trial court abuses its discretion when its decision is arbitrary, unreasonable, and without reference to guiding principles. *Id*. We examine the entire record when conducting an abuse of discretion review. *Id*. The Texas Family Code provides that a party may demand a jury trial regarding the appointment of a conservator, but may not demand a jury on issues

of child support, a term or condition of possession of or access to the child, or any right or duty of a conservator, other than who has the exclusive right to designate primary residence. TEX. FAM. CODE ANN. § 105.002 (Vernon Supp. 2009).

Jon initially requested a jury trial on whether he should be appointed sole managing conservator. Monica was granted a summary judgment on Jon's request, with the trial judge finding there was no evidence of a material and substantial change to support a modification of the joint managing conservatorship. At the beginning of the trial, the judge ruled:

> Basically, after having reviewed the order dated May 22, 2008, signed by Judge Littlejohn, based on a hearing that she conducted March 3, 2008, the title of the order is Order Partially Granting Petitioner's Motion to Sever and For No Evidence Summary Judgment, in reviewing that, this Court has found that that order includes a granting of the summary judgment to the extent that there is a specific finding that there is no evidence of material and substantial change to support a modification as requested by Jon Hendricks.

> This court finds that there is no pending custody issue that's proper for submission to a jury, and that's a finding the Court has made based on reviewing the procedural history and pleadings and order in this case.

The parties then conferred on the remaining issues, after which the trial court asked if anyone was asking for a jury and if so on what issue. Jon's counsel responded "The only issue we were asking on the jury [sic] was for the joint managing conservatorship, and you have ruled on that." Contrary to his assertions, Jon was not denied a jury on the issue of joint managing conservatorship. Rather, that issue was resolved by summary judgment and severed. Therefore, there remained no issues proper for a jury determination. *See* TEX. FAM. CODE ANN § 105.002 (Vernon Supp. 2009).

*B. Modification to possession of and access to the children*

Jon argues the trial court abused its discretion in reducing his access to and possession of R.H.H. and C.E.H. to the first, third, and fifth weekends of the month and his summer visitation to

two seven-day periods. Jon claims this deviation from the standard possession order is not in the best interest of his children.

The Texas Legislature has declared it is the public policy of the state to "encourage frequent contact between a child and each parent for periods of possession that optimize the development of a close and continuing relationship between each parent and child." *See* TEX. FAM. CODE ANN. § 153.251 (Vernon 2008). To achieve this end, the legislature established a rebuttable presumption that a standard possession order provides the reasonable minimum possession of a child for a parent named as a joint managing conservator, and such order is in the best interest of the child. *See id.* at § 153.252. When deviating from the standard possession order, the trial court looks to the standard possession order guidelines and may also consider the age, developmental status, circumstances, needs, and best interests of the child, the circumstances of the joint managing conservators, and any other relevant factor. TEX. FAM. CODE ANN. § 153.256 (Vernon 2008). A court may modify an order that provides for the possession of and access to a child if (1) modification would be in the best interest of the child and (2) the circumstances of the child, a conservator, or another party affected by the order have materially and substantially changed since the date or the rendition of the order. TEX. FAM. CODE ANN. § 156.101(1)(A) (Vernon Supp. 2009). Jon does not claim there has not been a material and substantial change in circumstances. Rather, he argues removing weeknight visits and shortening his summer time possession is not in the children's best interest.

A trial court has broad discretion to decide the best interest of a child in family law matters such as custody, visitation, and possession, and we review a decision to modify possession for a clear abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1991); *In re Guthrie*, 45 S.W.3d 719, 727 (Tex. App.—Dallas 2001, pet

denied). A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986); *In re Guthrie*, 45 S.W.3d at 727. The trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Vardilos v. Vardilos*, 219 S.W.3d 920, 921 (Tex. App.—Dallas 2007, no pet.); *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). The trial court is in the best position to observe the witnesses and their demeanor and, therefore, is given great latitude when determining the best interest of the children. *Garner v. Garner*, 200 S.W.3d 303, 306 (Tex. App.—Dallas 2006, no pet.). Under the abuse of discretion standard, legal and factual sufficiency of the evidence are not independent grounds of review, but instead constitute factors relevant to assessing whether the trial court abused its discretion. *Vardilos*, 219 S.W.3d at 921.

A standard possession order was entered when Jon and Monica divorced in 1998. In 2004, Monica agreed to amend the order to allow visitation on alternate days each week, depending on whether Jon had the boys for the preceding weekend. However, Monica testified that by 2008, the alternating weekday possession no longer worked. Monica testified the visitation schedule was not only logistically difficult, but also affected the boys' school work because Jon would not help the children on homework projects. Additionally, Monica testified the boys missed tutoring sessions when they were with their father. Monica also stated the alternating visitation days during the week interfered with the boys being able to independently choose hobbies, sports or other extra-curricular activities.

Monica testified Jon would not cooperate with taking the boys to after-school activities when they occurred on Jon's days of possession. For example, Monica explained E.H.H. was taking karate

and Jon refused to take him to the classes when the classes were switched to a day on which he had possession. Monica also explained there was a problem with summer activities. Monica testified the boys were interested in swimming, but Jon would not take them to Monica's neighborhood pool to swim with the club while he had possession of the boys. Jon would not admit he intentionally failed to take the boys to their extra-curricular activities. Instead, Jon testified Monica did not keep him apprised of the boys' activities. He also testified that he did not take them to some activities, such as karate, because he did not believe the boys were actually interested in the activity.

Monica told the court she and Jon disagreed about which school the boys should attend and this caused conflict. Since first starting school, the boys attended St. George Episcopal School, where Monica taught. As a teacher, she received a discount on the tuition. However, Jon was opposed to the boys attending the private school and wanted the boys in a public school. In contravention of a court order giving Monica the right to make educational decisions, Jon enrolled R.H.H. in a public school. Monica obtained a temporary restraining order to prevent Jon from withdrawing the children from St. George and enrolling them in public school. A conflict over school choices also arose when R.H.H. was accepted at the International School of the Americas for high school, the school R.H.H. wanted to attend. Monica testified Jon was opposed to this northeast side public school because it is "on the inside of Loop 410" and he objected to the racial composition of the school.

Monica testified that although she and Jon attended co-parenting classes, their communication problems did not improve, and the conflict between them actually increased. Several transcripts of tape recorded phone messages and numerous emails from Jon were introduced into evidence. The voice messages and emails include vulgar, derogatory remarks about Monica personally and about her ability to parent. Jon testified his language in the voice message was

"inexcusable," that he had lost his temper and was frustrated because he had not been able to reach his children. Monica testified that Jon's anger toward her led him to write an anonymous letter to the parents of one of Monica's students. The letter included information about Monica that she felt was slanderous. Jon lied to the judge at a pre-trial hearing when asked whether he had written the letter. It was not until he was ordered to allow an expert to examine his computer's hard drive that he admitted writing the letter. Jon stated during his testimony he sent the anonymous letter to give Monica and her attorneys "a taste of their own medicine." Jon admitted he lied under oath to the judge regarding the letter, explaining he and his attorney had never discussed the letter when he was first questioned about it. Yet, Jon stated he was a "very honest, forthcoming individual."

The trial court also heard from Dr. Dina Trevino, the court appointed psychologist. Dr. Trevino had numerous concerns regarding the children's best interest after interviewing the children, Monica, Jon, and school personnel. Both boys reported being uncomfortable alternating days each week between Jon's and Monica's homes. The boys told Dr. Trevino the weekday visitation schedule interfered with having time with either parent. Dr. Trevino testified that although the boys enjoyed spending time with Jon when he was in a good mood, they felt his good moods were rare. The boys also remarked to Dr. Trevino that they would not be truthful in front of their father and told her they lied during the home interview when Jon was present. Dr. Trevino testified both R.H.H. and C.E.H. consistently and strongly expressed they were uncomfortable saying anything that would upset their father.

Dr. Trevino testified that Monica promoted Jon's interest in the children's lives, never said anything negative about Jon, and appeared attentive to the children's emotions, their needs and tried to make them comfortable. Dr. Trevino reported that on several occasions Jon acted inappropriately

at the children's school, embarrassing the boys, the school coach, and other parents. The doctor testified that when it comes to decisions about the children, Jon is combative and controlling, regardless of whether it is about which school the boys attend or what sport they choose to engage in. In her report, Dr. Trevino noted:

> Jon's inability or unwillingness to promote the children's positive relationship with their mother is damaging to these children, as is his continuing belief that talking to the children about the litigation and about their mother is not harmful. Even while insisting that working in cooperative parenting therapy would resolve much of their issues, Jon maintained that he would continue talking to the children about anything he wished, regardless of the wishes of the Court or any therapist.

Dr. Trevino also testified that if Jon's behavior had not improved since she prepared her child custody evaluation report, then she recommends Jon have limited visits and less time with the boys.

The second testifying psychologist, Dr. JoAnn Murphey, first saw R.H.H. and C.E.H. when Jon attempted to withdraw R.H.H. from St. George. She saw them again a few months before trial, and testified the relationship with their father had deteriorated since her first visits with the boys. Dr. Murphey testified the boys had a strong preference for their mother's home, that they felt it was a child-centered home. She stated the boys described their father's home as "all about him" and they wanted to spend less time with their father. She also testified the boys were reluctant to have anything they said about their father repeated for fear of retaliation by him. At the conclusion of the evidence, the judge stated:

> I want the record to reflect in addition to the testimony that was considered by the Court, that will be reflected on the record, the Court also had the opportunity to review the body language of the parties and wishes the record to reflect that the body language of Mr. Hendricks throughout the trial was disrespectful, discourteous, sarcastic, rude to attorneys, to Ms. Hendricks, [and] to witnesses.

The trial judge found Jon had been verbally abusive to Monica and that putting her in a situation where she had to verbally communicate with Jon was not in the best interest of the children. The court ordered that Monica has the exclusive right to make educational decisions for the children, which includes all decisions related to their regular term and summer schools, after school activities, and extra-curricular activities. The court determined a standard possession order was not in the best interest of the children due to Jon's refusal to be flexible or honest with Monica and his verbally abusive behavior toward her.

The trial court had broad discretion to decide what was in the best interest of R.H.H. and C.E.H. *Gillespie*, 644 S.W.2d at 451; *Worford*, 801 S.W.2d at 109; *In re Guthrie*, 45 S.W.3d at 727. Monica and Jon accuse each other of causing their communication problems and their inability to work together regarding the children. However, the trial court was in the best position to judge their credibility, and found Jon was uncooperative and refused to be flexible. Additionally, Dr. Trevino attributed the cause of Monica and Jon's disagreements about the children to Jon's need to be in control. She recommended the children have less time with their father if his combative and controlling behavior had not changed since she prepared her report. The evidence shows Jon violated a prior court order regarding educational decisions, lied under oath, was uncooperative, and was verbally abusive to Monica. The evidence demonstrates that weekday possession and month-long summer possession interferes with the boys school and extracurricular activities because Jon does not cooperate and is not flexible. The possession order eliminates the weekday possession and shortens the summer possession, but still allows Jon possession every first, third and fifth weekend each month. Reviewing the record in its entirety, we cannot say the trial court abused its discretion by modifying the terms of possession.

*B. Child support and payment of health insurance premiums*

Jon contends the trial court abused its discretion in ordering him to pay $1,800.00 per month in child support. Jon argues Monica was not entitled to a modification because she did not establish there has been a material and substantial change in circumstances since the 2004 child support order. However, Monica was not required to show a material and substantial change in circumstances because it had been three years since the child support order was rendered or last modified. TEX. FAM. CODE ANN. § 156.401(a)(2) (Vernon 2008). The Family Code provides that when it has been three years since the last order, child support can be modified if the monthly amount of the child support award under the existing order differs by either twenty percent or $100 from the amount that would be awarded in accordance with the present child support guidelines. *Id*. [1]

Under the Texas Family Code, net resources for calculating child support include all wage and salary income and other compensation for personal services, including commissions, overtime pay, tips, bonuses, and all other income actually being received, including gifts and prizes. *Id*. § 156.062(a), (b)(1), (5) (Vernon 2008). The duty to support a child is not limited to a parent's ability to pay from current earnings, but also extends to his financial ability to pay from any and all sources that might be available. *Garner*, 200 S.W.3d at 306; *In re P.J.H.,* 25 S.W.3d 402, 405 (Tex. App.—Fort Worth 2000, no pet.); *In re Striegler*, 915 S.W.2d 629, 638 (Tex. App.—Amarillo 1996, writ denied). The record indicates Jon's adjusted gross income for 2007 was $181,567.00 and the

---

[1] Section 156.401(a-1) of the Texas Family Code provides that if the parties agree to an amount of child support that differs from the amount that would be awarded under the support guidelines, the court may modify the order only if there has been a material and substantial change in circumstances. However, Jon did not raise this argument in the trial court, nor is there evidence that the amount of child support agreed upon in 2004 differed from the child support guidelines.

four months before trial he was paid an average of $29,861.00 per month. Jon also testified his annual income in 2008 was $199,000.00. Applying the statutory guidelines to Jon's first $7,500.00 of net resources, the trial court could have awarded $1,875 in child support. TEX. FAM. CODE ANN. § 154.125 (Vernon 2008). The $1,200.00 in child support established in 2004 differed by more than twenty percent from the amount in accordance with the 2009 child support guidelines ($1,875.00). The trial court did not abuse its discretion in ordering Jon pay $1,800.00 in child support.[2]

*C. Attorney's fees*

Jon argues the trial court abused its discretion in ordering him to pay $94,396.42 in attorney's fees. We disagree.

It is within the trial court's sound discretion to award reasonable attorney's fees in a suit affecting the parent-child relationship. TEX. FAM. CODE ANN. § 106.002 (Vernon 2008); *Lenz v. Lenz*, 79 S.W.3d 10, 21 (Tex. 2002); *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996). To support an award of attorney's fees there must be evidence of the time spent by the attorney on the case, the nature of the preparation, the complexity of the case, the experience of the attorney, and the prevailing hourly rates. *Hardin v. Hardin*, 161 S.W.3d 14, 24 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

The evidence on attorney's fees includes itemized billing statements, a summary of legal fees, a pleadings index, a summary of Jon's actions that contributed to increased fees, and Monica's

---

[2] Jon also stated in point of error six he was appealing the order requiring him to pay for health insurance. Jon waived this complaint because he did not present any argument or authorities on the issue of the children's health insurance. TEX. R. APP. PROC. 38.1(i); *Tello v. Bank One, N.A.*, 218 S.W.3d 109, 116 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Jordan v. Jefferson Co.*, 153 S.W.3d 670, 676 (Tex. App.—Amarillo 2004, pet. denied).

attorney's testimony explaining the fees. In addition, the record includes emails and transcripts of voice messages from Jon wherein he expressed his intent to do everything possible to increase litigation costs as retaliation against Monica. The trial court did not abuse its discretion in ordering Jon to pay $94,396.42 in attorney's fees.

*D. Trial Court's Jurisdiction* and *Interview of Children*

Finally, Jon contends the trial court lacked jurisdiction to hear the case because it was not the court of original jurisdiction and the Bexar county rotating docketing system violates the Texas Family Code, the United States and Texas Constitutions, and the Texas Government Code. Jon also complains that the trial court erred in not interviewing his children. However, Jon did not present argument or authorities on either alleged error, thus, the issues are waived. TEX. R. APP. PROC. 38.1(i); *Tello v. Bank One, N.A.*, 218 S.W.3d 109, 116 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Jordan v. Jefferson Co.*, 153 S.W.3d 670, 676 (Tex. App.—Amarillo 2004, pet. denied).[3]

We affirm the trial court's final judgment.

Steven C. Hilbig, Justice

---

[3] We note the issue of the jurisdiction of Bexar County courts and the constitutionality of the rotating docketing system has been reviewed by this court. We held "the statutory and constitutional exchange-of-benches provisions authorize any district judge in the county to rule on custody and support matters so long as the record is clear that the SAPCR is filed in the court of continuing, exclusive jurisdiction, and that the judge is acting for that court." *See In re Garza*, 981 S.W.2d 438, 440 (Tex. App.—San Antonio 1998, orig. proceeding).